BRIAN MOORE ET AL. *v.* CONNECTICUT LIQUOR CONTROL COMMISSION

SUPERIOR COURT    JUDICIAL DISTRICT OF    FILE NO. 149405
HARTFORD-NEW BRITAIN AT HARTFORD

Memorandum filed April 28, 1980

*Hyman, Harding, Asmar & Svonkin,* for the plaintiffs.

*Carl R. Ajello,* attorney general, and *Richard Sheridan,* assistant attorney general, for the defendant.

FISHMAN, J. This is an appeal pursuant to General Statutes § 4-183 from the action of the defendant liquor control commission of the state of Connecticut which suspended the liquor permit of Brian Moore, backed by Robert D. Miller, receiver of the Har-Hil Corporation.

The commission took this action following a hearing held on May 1, 1978, and its decision was based on findings that the following two separate violations occurred: "On January 19, 1978 in the Town of Hartford you violated Section 30-6-A24 subsection (d) of the Regulations of the Commission in that you did employ on a permit premises a person, unclothed or in such attire, costume or clothing exposing the portion of the female breast below the top of the areola, any portion of the pubic hair, anus, cleft of the buttocks, vulva or genitals."

"On January 19, 1978 in the Town of Hartford you violated Section 30-6-A24 subsection (e) of the Regulations of the Commission in that you did permit acts simulating sexual intercourse; displaying the portion of the pubic hair, anus, cleft of the buttocks, vulva or genitals; permit a person or entertainer to remain in or upon the permit premises who exposes to the public view the portion of the pubic hair, anus, cleft of the buttocks, vulva and genitals." The violations stem from the performance of a stage show entitled "Oh! Calcutta!" which occurred at the Hartford Hilton hotel ballroom on January 19, 1978.

At the direction of the commission, two inspectors attended the performance on that evening. They described the show as "a loosely connected series of 12 vignettes of comedy, song and dance." The inspectors observed the members of the cast at various times during the show either entirely or partially nude. Additionally, they observed one scene

which, in their opinion, "culminated in actions intended to convey the impression of sexual intercourse." Finally, in two other skits, "the actions and conversations of the performers implied that certain sexual acts were taking place out of sight of the audience."

The inspectors further observed that no liquor was visible during the show in the ballroom, where 500 people were in attendance, and that an announcement was made at intermission that no one who left the mezzanine where the ballroom was located would be allowed to return.

One of the inspectors described the area where the ballroom was located in the hotel and stated that it was several hundred feet away from any bar, that the show was in the form of a stage production, that there were no facilities in the ballroom for serving liquor and that no liquor was served.

The first issue raised by this appeal is whether the commission exceeded its statutory authority in suspending the permittee's license. Section 30-6 of the General Statutes provides in pertinent part: "The division of liquor control shall have power to enforce the provisions of this chapter and may make all necessary regulations for that purpose and for carrying out, enforcing and preventing violations of all or any of the provisions of this chapter, for the inspection of permit premises and the method of carrying on the business of any permittee, for insuring sanitary conditions, for insuring proper, safe and orderly conduct of licensed premises and for protecting the public against fraud or overcharge."

The nature of the liquor business is such that the police power to regulate and control it runs broad and deep. *Hing Wan Wong* v. *Liquor Control Commission*, 160 Conn. 1, 7; *Aminti* v. *Liquor Control*

*Commission,* 144 Conn. 550, 552. The permittee argues, however, that in this instance the commission has exceeded the authority delegated to it by the legislature. The plaintiff bases this argument on the fact that the evidence at the hearing conducted by the commission reflected that there was no liquor served in, nor was anyone permitted to bring liquor into, the ballroom where the production was staged.

The plaintiff's privilege to sell liquor under his permit and his corresponding obligations under the Liquor Control Act; General Statutes §§ 30-1 through 30-113; are not limited to his barroom. Under his hotel permit, the plaintiff can sell liquor "to be consumed on the premises." General Statutes § 30-21. The word "premises" is not defined in the Liquor Control Act. Section 30-1 (17) of the act states: " 'Hotel' means every building or other structure kept, used, maintained, advertised or held out to the public to be a place where food is served at all times when liquor is served and where sleeping accommodations are offered for pay to transient guests . . . . Golf facilities and swimming pools within the confines of the entire property owned by and under the control of the permittee or backer shall also be considered part of the hotel premises."

If the statutory definition goes so far as to include golf facilities and swimming pools as part of the hotel premises, it is reasonable to assume that the legislature intended that a ballroom of the hotel should also be considered part of the "hotel premises." Thus, the plaintiff could sell alcoholic liquor to be consumed in the ballroom. General Statutes § 30-21. The liquor control commission's authority and jurisdiction pursuant to § 30-6 of the General Statutes extend to the "permit premises." This authority and jurisdiction parallels the permittee's dominion and control for the purpose of conducting

his business. Since the permittee enjoyed such dominion and control in the present case, the commission did not exceed its statutory powers and jurisdiction. Any other conclusion would seriously hamper the commission's ability to regulate permittee premises. If a permittee could change the dimensions of his premises instantly, then liquor violations could occur on the premises and the commission would be powerless to act under the fiction that the violation did not occur on the permit premises.

The second issue raised is whether the commission's decision in suspending the plaintiff's permit in this factual situation violated the United States constitution.

It has been held constitutionally permissible to forbid *some* performances which would otherwise enjoy first amendment protection when the performances occur in establishments licensed to sell liquor by the drink, on the theory that it is the sale of liquor during such performances that is forbidden and not the performances themselves. To uphold the suspension of the plaintiff's permit in this factual situation, however, would constitute a significant step beyond the cases so holding, which step should not be taken absent an explicit holding by the United States Supreme Court.

The regulations of the liquor control commission in question here, §§ 30-6-A24 (d) and (e), have been held constitutional on their face by the United States District Court for the District of Connecticut. *Inturri* v. *Healy,* 426 F. Sup. 543. In that case, the court relied heavily on *California* v. *LaRue,* 409 U.S. 109, in which the United States Supreme Court upheld similar regulations promulgated by the California department of alcoholic beverage control. The *Inturri* court (p. 547) quoted the following

footnote from the *LaRue* decision: "Because of the posture of this case, we have necessarily dealt with the regulations on their face, and have found them to be valid. The admonition contained in the Court's opinion in *Joseph E. Seagram & Sons* v. *Hostetter*, 384 U.S. 35, 52 . . . (1966), is equally in point here: 'Although it is possible that specific future applications of . . . [the statute] may engender concrete problems of constitutional dimension, it will be time enough to consider any such problems when they arise.'" *California* v. *LaRue*, supra, 119n.

The court in *Inturri* also specifically stated that it was not called upon to make a determination as to whether, under *LaRue*, the commission's regulations could be applied generally to dinner-theater presentations, given the artistic merits of particular productions and the existence of a theater type environment. *Inturri* v. *Healy*, supra, 550.

Thus, although the regulations in question have been held constitutional on their face, this court is not foreclosed from determining whether their application under the particular facts of this case is constitutional. The facts of this case differ from any of the reported decisions in at least three respects: (1) The activity in question was in the nature of a stage production; (2) the permit which was suspended was a hotel permit; and (3) the production was staged in the ballroom of the hotel. There were no facilities in the ballroom for service of liquor and no liquor was served. The inspectors from the liquor control commission who attended the show testified that no liquor was visible in the ballroom during the show and that an announcement was made at intermission that no one who left the mezzanine where the ballroom was located would be allowed to return.

The question of whether the suspension of the plaintiff's license under these circumstances violated the constitution necessitates a review of the *California* v. *LaRue* decision and the interpretations of that decision by the federal courts.

In *California* v. *LaRue,* the director of California's department of alcoholic beverage control appealed a decision of the United States District Court for the Central District of California which held that substantial portions of the department's regulations violated the first and fourteenth amendments to the United States constitution.

The regulations in question were enacted out of a concern with the progression in a few years' time from topless dancers to bottomless dancers and other forms of "live entertainment" in bars and nightclubs that the department licensed. Numerous incidents of concern to the department of alcoholic beverage control had occurred: "Customers were found engaging in oral copulation with women entertainers; customers engaged in public masturbation; and customers placed rolled currency either directly into the vagina of a female entertainer, or on the bar in order that she might pick it up herself. Numerous other forms of contact between the mouths of male customers and the vaginal areas of female performers were reported to have occurred. Prostitution occurred in and around such licensed premises, and involved some of the female dancers. Indecent exposure to young girls, attempted rape, rape itself, and assaults on police officers took place on or immediately adjacent to such premises." *California* v. *LaRue,* supra, 111.

The regulations enacted in response to this situation were similar to the regulations in issue in the present case. The Supreme Court reversed the lower court in a decision by Mr. Justice Rehnquist

and held that the regulations were constitutional. The court reasoned that the regulations came before it "not in the context of censoring a dramatic performance in a theater, but rather in a context of licensing bars and nightclubs to sell liquor by the drink." Id., 114. The court noted that the states have broad latitude under the twenty-first amendment to control the manner and circumstances under which liquor may be dispensed. A discussion of the twenty-first amendment and its relation to other parts of the constitution ensued, the essence of which is stated in a quotation from *Hostetter* v. *Idlewild Liquor Corporation*, 377 U.S. 324. "Both the Twenty-First Amendment and the Commerce Clause are parts of the same Constitution. Like other provisions of the Constitution, each must be considered in the light of the other, and in the context of the issues and interests at stake in any concrete case." Id., 332; *California* v. *LaRue*, supra, 115.

The court acknowledged that the challenged regulations would proscribe some forms of visual presentation that would not be found obscene under previous decisions, but disposed of the first amendment issue with the following language: "The substance of the regulations struck down prohibits licensed bars or nightclubs from displaying, either in the form of movies or live entertainment, 'performances' that partake more of gross sexuality than of communication. While we agree that at least some of the performances to which these regulations address themselves are within the limits of the constitutional protection of freedom of expression, the critical fact is that California has not forbidden these performances across the board. It has merely proscribed such performances in establishments that it licenses to sell liquor by the drink. . . . This is not to say that all such conduct

and performance are without the protection of the First and Fourteenth Amendments. But we would poorly serve both the interests for which the State may validly seek vindication and the interests protected by the First and Fourteenth Amendments were we to insist that the sort of bacchanalian revelries that the Department sought to prevent by these liquor regulations were the constitutional equivalent of a performance by a scantily clad ballet troup in a theater." *California* v. *LaRue,* supra, 118.

The court in *Escheat, Inc.* v. *Pierstorff,* 354 F. Sup. 1120, quoted the above language in addressing the issue of whether, in the aftermath of *LaRue,* any activity taking place within a licensed tavern can be protected by the first amendment: "The final sentence in this passage suggests that a 'scantily clad ballet troup' performing in a theater would receive the full protection of the first amendment. Would such a performance receive similar protection if the theater were licensed to serve liquor? The passage quoted suggests an affirmative answer. Furthermore, a negative answer would constitute an erosion of first amendment freedom which I am unwilling to accept, absent an explicit holding by the Supreme Court requiring such a result. Therefore, I conclude that some shows which fall somewhere between Mary Poppins, on the one hand, and 'Bacchanalian revelries,' on the other, even when performed in a bar, continue to be entitled to first amendment protection." *Escheat, Inc.* v. *Pierstorff,* supra, 1126. See also, *Clark* v. *City of Fremont,* 377 F. Sup. 327; *Inturri* v. *Healy,* supra.

Courts are in general agreement as to the existence of an area of speech somewhere between "Mary Poppins" and "bacchanalian revelries" that continues to enjoy first amendment protection even when occurring in a bar. The decision in *LaRue,* which has been criticized by some courts and com-

mentators as inconsistent with the first amendment's preferred position in such prior Supreme Court decisions as *Murdock* v. *Pennsylvania,* 319 U.S. 105, 115,[1] left great ambiguity as to what test should be used when the constitutionality of a restriction on speech is sought to be justified by a state's authority under the twenty-first amendment.

Some courts have used a rational relation test, stating that the *LaRue* court "intimated" that all that is required is that a relation exist between the contested enactment and some valid regulatory purpose which is not wholly irrational. *Inturri* v. *Healy,* supra, 547; *Richter* v. *Department of Alcoholic Beverage Control,* 559 F.2d 1168, 1170–73 (9th Cir.), cert. denied, 434 U.S. 1046. Other courts, in accordance with the language in *LaRue* to the effect that " 'provisions of the Constitution . . . must be considered in light of [each] other, and in the context of the issues and interests at stake in any concrete case' "; *California* v. *LaRue,* supra, 115; have used a balancing test. *Clark* v. *City of Fremont,* supra, 341–42. Whether a rational relation test or a balancing test is used, the result in the present case should be the same.

The activity in question occurred within the ballroom of the hotel, an area which of necessity must serve a multiplicity of purposes. The stage production in question would seem to fall into that area between "Mary Poppins" and "bacchanalian revelries" that enjoys some first amendment protection although associated with the sale of liquor.

The critical factors here are that there were no facilities for serving liquor in the ballroom, that no liquor was served in the ballroom and that an

---

[1] See, e.g., *Escheat, Inc.* v. *Pierstorff,* 354 F. Sup. 1120, 1126; "The Supreme Court, 1972 Term," 87 Harv. L. Rev. 1, 137–38 (1973).

announcement was made at intermission that no one who left the mezzanine where the ballroom was located would be allowed to return.

The concerns which have led courts to uphold possible infringement of first amendment rights in the cases previously cited are not present in this factual setting. To uphold the suspension of the plaintiff's permit under these circumstances would constitute a significant erosion of first amendment rights which should not be tolerated "absent an explicit holding by the Supreme Court requiring such a result." *Escheat, Inc.* v. *Pierstorff,* supra, 1126.

Section 4-183 (g) of the General Statutes provides that when a decision of an administrative agency is in violation of constitutional provisions, that decision may be reversed.

Since this discussion is dispositive of this appeal, it is not necessary to discuss the other claims of the plaintiff.

Accordingly, the decision of the liquor control commission in suspending the plaintiff's license is, for the foregoing reasons, reversed.