NELSECO NAVIGATION COMPANY ET AL. *v.*
DEPARTMENT OF LIQUOR CONTROL
(10121)

DUPONT, C. J., O'CONNELL and LAVERY, Js.

Argued December 4, 1991—decision released May 26, 1992

*Richard E. Gruskin,* for the appellants (plaintiffs).

*Martin Rosenfeld,* assistant attorney general, with
whom, on the brief, was *Richard Blumenthal,* attor-
ney general, for the appellee (defendant).

O'CONNELL, J. The defendant department of liquor
control found that the plaintiffs[1] (1) permitted or

[1] The plaintiffs are the Nelseco Navigation Company, a Connecticut cor-
poration, and its president, John R. Wronowski. Nelseco was the backer
and John Wronowski was the permittee.

suffered a disturbance and conducted a premises in a manner which constituted a nuisance in violation of § 30-6-A24 (a)[2] of the Regulations of Connecticut State Agencies, and (2) allowed an intoxicated person to loiter on its premises in violation of § 30-6-A24 (c)[3] of the Regulations of Connecticut State Agencies. The defendant suspended the plaintiffs' liquor license for five days and offered to accept a fine to be determined in amount in lieu of the suspension. General Statutes § 30-58a.

The plaintiffs appealed to the Superior Court which affirmed the defendant's decision and dismissed the appeal. The plaintiffs now appeal to this court from the Superior Court's decision.

The plaintiffs contend that the trial court improperly dismissed their appeal because (1) the defendant acted arbitrarily, illegally or in abuse of its discretion as a matter of law, (2) the defendant was overreaching in the use of its police power, and (3) the plaintiffs' right to due process was violated. We reverse the decision of the trial court.

The facts necessary to decide this appeal are as follows. The plaintiffs own and operate the M. V. Anna C (ship) which they operate primarily as the Block Island ferry. Occasionally, the plaintiffs charter the ship for private parties. On August 12, 1989, the plaintiffs chartered the ship to the Savage Brothers rock band for a private cruise. Although the plaintiffs had a boat

---

[2] Section 30-6-A24 (a) of the Regulations of Connecticut State Agencies provides in pertinent part: "No disturbances, brawls, unnecessary noises, including loud and disturbing music, [or] unlawful conduct . . . shall be permitted or suffered upon any permit premises, nor shall such premises be conducted in such a manner as to constitute a nuisance."

[3] Section 30-6-A24 (c) of the Regulations of Connecticut State Agencies provides in pertinent part: "No permittee or his servant or agent shall conduct the permit premises in such a manner as to allow an intoxicated person or persons to loiter thereon."

liquor permit,[4] the charter agreement did not call for them to sell any liquor or provide any employees to serve, deliver, give or in any other manner encourage or assist in the consumption of alcohol during the cruise. The ship's liquor inventory was securely locked away from possible access.

By the terms of the charter contract, the plaintiffs leased the vessel to the band for its exclusive use between 8 p.m. and 12:01 a.m. Under the charter agreement, the band had the obligation to maintain order on board the ship and to provide security. The activities of the passengers were under the direct control of the band and not of the plaintiffs. The plaintiffs' responsibilities under the charter contract were restricted to navigation of the ship. The band did not sell, furnish or deliver any liquor during the cruise. It is, therefore, not disputed that any liquor consumed on the ship was brought aboard by the passengers. The event was what is colloquially referred to as a B.Y.O.B.[5] affair. Most of the passengers were brought to the ship in chartered buses that returned them to Windsor Locks at the conclusion of the cruise. The price of the ticket included round trip transportation from Windsor Locks to New London plus the cruise and dance. Windsor Locks was apparently the assembly point for transportation to this charter cruise and dance.

About an hour after the ship sailed from New London, a disturbance broke out on board, involving a fistfight and rowdy, assaultive conduct by some of the passengers. Many of the passengers appeared to be intox-

[4] General Statutes § 30-29: "A boat permit shall allow the sale and public consumption of alcoholic liquor by passengers with or without meals upon any one designated boat engaged in the transportation of passengers for hire to or from any port in this state."

[5] Bring your own bottle.

icated. Of the estimated 1000 to 1500 passengers,[6] witnesses estimated that between fifteen and forty people were involved in a fracas that lasted less than five minutes. The disturbance ended when the band's security personnel locked the two most disruptive individuals in the men's room.[7] The captain returned the ship to the New London pier. Upon docking, the two troublemakers were turned over to the police and paramedics were called to assist an unconscious female passenger. The record does not support the finding that this woman was intoxicated. The remaining passengers were in varying stages of sobriety. After placing the two men in the custody of the police and the unconscious passenger in the care of the paramedics,[8] the ship set sail once again and completed the cruise uneventfully.[9]

Following a hearing, the plaintiffs' boat permit was suspended for five days on the ground that the plaintiffs permitted a disturbance on permit premises *or* that an intoxicated person was permitted to loiter thereon, in violation of regulations promulgated by the defendant.

The plaintiffs' second claim is dispositive of this appeal. The issue is whether the department of liquor

---

[6] The ship's capacity was 1600 persons. No evidence of the exact number of the passengers on the cruise was offered, nor was there evidence of the number of tickets sold. The 1000 to 1500 passenger figure stems from testimony of witnesses whose qualifications to make accurate estimates of this type were not established.

[7] In an attempt to use the vernacular of the sea, the plaintiffs' counsel refers to the securing of these men as "putting them in chains."

[8] In a further attempt at salty lingo, the plaintiffs' counsel refers to putting these people "on the beach."

[9] The defendant's finding that the New London police recommended that the cruise not continue is not supported by the record. The police sergeant who made that comment testified that he was sure that it was not relayed to the ship's captain. This is not surprising because he was not sure whether the man to whom he made the comment was a deckhand of the ship or a pier hand with no connection to the ship.

control has jurisdiction over a premises when no liquor is available for sale thereon, despite the fact that the owner of the property holds a liquor permit and on other occasions and under other conditions sells liquor.

We address the question of whether the defendant is the proper authority to police a threat caused by the consumption of alcohol when it occurs aboard a ship. The plaintiffs argue that it was not within the defendant's jurisdiction to police a private party on permit premises when there was no sale or delivery of alcoholic beverage thereon by the permittee or by its agent. The defendant derives its power from General Statutes § 30-6,[10] which gives it general authority to oversee a permittee's conduct of its liquor business. In the present case, however, the plaintiffs had locked away their liquor and were not, by any reasonable stretch of the imagination, involved in the liquor business during this cruise. They were simply sailing or operating a ship. The disturbance that occurred here was in no way related to the plaintiffs' exercise of their privilege to dispense liquor. Even if the plaintiffs did not hold a boat permit, but instead merely operated a charter service, the identical disturbance would have occurred. Under those circumstances, the defendant clearly would not have had jurisdiction to intervene to protect the public safety. Accordingly, the mere fact that the plaintiffs had a permit, pursuant to which they sold liquor

---

[10] General Statutes § 30-6, a section of the Liquor Control Act, provides in pertinent part: "(a) There shall be a department of liquor control. The department of liquor control shall have power to enforce the provisions of this chapter, and may make all necessary regulations, subject to the provisions of subsection (b) of this section, for that purpose and for carrying out, enforcing and preventing violation of all or any of the provisions of this chapter, for the inspection of permit premises, for insuring sanitary conditions, for insuring proper, safe and orderly conduct of licensed premises and for protecting the public against fraud or overcharge. . . . It shall have power generally to do whatever is reasonably necessary for the carrying out of the intent of this chapter . . . ."

on other occasions, did not extend the defendant's jurisdiction to this nonliquor charter. The defendant does not have jurisdiction over every social occasion where liquor is consumed.

The fallacy in the defendant's "guardian of the public safety" argument is that the defendant does not claim to have jurisdiction over the many ships without liquor licenses plying Long Island Sound on which identical B.Y.O.B. parties may be taking place. The passengers on such nonlicensed ships are in no greater jeopardy due to the lack of the defendant's protection. Local and state police, together with the United States Coast Guard,[11] provide sufficient protection for the public concerning B.Y.O.B. drinking on nonlicensed ships. As evidenced by the events that occurred in this case, the police, when summoned by the captain of the ship, were on the shore awaiting the ship's arrival. Any jurisdiction of the defendant would have been superfluous.

Underlying the defendant's argument is its apparent belief that once a permit has been issued, the premises are subject to its jurisdiction twenty-four hours a day, seven days a week, and that there is no way in which the premises can, even temporarily, be freed from this control. The defendant argues that, "a premises can never be shorn of the jurisdiction of the [department of liquor control] as long as a permit has been issued." The defendant fails to furnish a legal authority for this sweeping statement, nor could we locate any. The defendant's contention is true only insofar as it means that in the operation of his liquor business, a permittee cannot excuse himself from liability on the ground that a violation was in fact committed by an agent or employee and not by the permittee personally. We do not agree with the defendant's unsupported theory that there cannot be circum-

---

[11] See 14 U.S.C.A. § 2.

stances under which premises, otherwise used for the sale of liquor, may not be temporarily removed from the defendant's jurisdiction.

"Administrative agencies are tribunals of limited jurisdiction and their jurisdiction is dependent entirely upon the validity of the statutes vesting them with power and they cannot confer jurisdiction upon themselves." *Castro* v. *Viera*, 207 Conn. 420, 428, 541 A.2d 1216 (1988). "An administrative agency can act only within the bounds of authority granted to it by its enabling statute and within constitutional limitations. It is wholly without power to modify, dilute or change in any way the statutory provisions from which it derives its authority . . . ." *Goldberg* v. *Insurance Department*, 9 Conn. App. 622, 626, 520 A.2d 1038 (1987). When an administrative agency takes action that exceeds its statutory authority, that action is void. *Breen* v. *Department of Liquor Control*, 2 Conn. App. 628, 634, 481 A.2d 755 (1984). The suspension of the plaintiffs' boat permit was unrelated to the defendant's responsibility to control the sale of liquor on the ship. See *Moore* v. *Connecticut Liquor Control Commission*, 36 Conn. Sup. 305, 314–15, 418 A.2d 955 (1980).

The two cases cited by the defendant do not support its position. *Rose* v. *Liquor Control Commission*, 124 Conn. 689, 199 A. 925 (1938), holds that a permittee is responsible for sales to minors even though the sales were not made by the permittee personally but by an employee. Further, *Koval* v. *Liquor Control Commission*, 149 Conn. 63, 67, 175 A.2d 358 (1961), requires proof of agency by the person who delivers liquor to minors. There is no contention in the present case that the passengers who brought the liquor to this ship were employees or agents of the plaintiffs.

The defendant argues that if the plaintiffs prevail they could effectively evade the liquor control laws by

obtaining an annual boat permit but use their boat solely for charter cruises. The fallacy in this argument is that if the plaintiffs did not intend to sell liquor at any time, there would be no purpose in their acquiring a boat permit in the first place.

We conclude that the defendant was overreaching when it applied its regulations to the plaintiffs' ship under the circumstances of this case.

In view of our disposition of the plaintiffs' second claim, we do not reach the plaintiffs' other claims.

The judgment is reversed and the case is remanded with direction to render judgment sustaining the plaintiffs' appeal.

In this opinion the other judges concurred.