NELSECO NAVIGATION COMPANY ET AL. *v.* DEPARTMENT OF LIQUOR CONTROL
(14576)

PETERS, C. J., BERDON, NORCOTT, KATZ and PALMER, Js.

Argued April 1—decision released July 13, 1993

*Martin Rosenfeld,* assistant attorney general, with whom were *Robert Vacchelli,* assistant attorney general, and, on the brief, *Richard Blumenthal,* attorney general, for the appellant (defendant).

*Richard E. Gruskin,* for the appellees (plaintiffs).

NORCOTT, J. The sole issue in this appeal is whether the defendant department of liquor control has jurisdiction over a private party on premises covered by a liquor permit when there was no sale or delivery of alcoholic beverages thereon by the permittee or its agent. The defendant suspended the plaintiffs'[1] liquor license for five days because of a disturbance on the plaintiffs' boat involving intoxicated persons while the boat had been chartered for a private affair. The plaintiffs appealed that decision to the Superior Court, *Quinn, J.,* which upheld the defendant's decision and dismissed the appeal. The plaintiffs then appealed to the Appellate Court, which reversed the trial court's decision on the ground that the defendant had no jurisdiction over a licensed premises when the premises was not involved in the sale of liquor. *Nelseco Navigation Co.* v. *Department of Liquor Control,* 27 Conn. App. 614,

---

[1] The plaintiffs in this appeal are the Nelseco Navigation Company, a Connecticut corporation, and its president, John R. Wronowski. Nelseco was the backer and John Wronowski was the permittee. *Nelseco Navigation Co.* v. *Department of Liquor Control,* 27 Conn. App. 614, 608 A.2d 707 (1992).

608 A.2d 707 (1992).[2] We then granted the defendant's petition for certification to review the Appellate Court's decision.[3] We reverse.

The facts relevant to this appeal are adequately set forth in the Appellate Court's decision; we will therefore review them only briefly. The plaintiffs chartered the M. V. Anna C. (ship) to the Savage Brothers rock band for a private cruise to take place on August 12, 1989. Although the plaintiffs had a boat liquor permit,[4] the charter agreement limited the plaintiffs' responsibilities to navigation of the ship, and did not call for the plaintiffs to sell, serve or deliver any liquor or to provide any employees to sell, serve or deliver any liquor during the cruise. The ship's liquor inventory was securely locked away from possible access, and any liquor consumed on the ship was brought aboard by the passengers.

A quiet riverboat soiree this was not. The defendant found, and the plaintiffs do not dispute, that a disturbance broke out during the cruise. The disturbance included a fist fight, assaultive conduct by some of the passengers, excessive drinking and intoxication.

Following a hearing, the defendant suspended the plaintiffs' boat liquor permit for five days, finding that

[2] Because the Appellate Court concluded that the defendant lacked jurisdiction over the plaintiffs' premises in this case, it did not reach the other issues before it. The plaintiffs also had appealed to the Appellate Court the issues of: (1) whether the defendant had acted arbitrarily, illegally or in abuse of its discretion as a matter of law; and (2) whether the plaintiff's right to due process had been violated. *Nelseco Navigation Co.* v. *Department of Liquor Control,* 27 Conn. App. 614, 615, 608 A.2d 707 (1992).

[3] We certified the following question: "Does the department of liquor control have jurisdiction to police a private party on premises covered by a liquor permit, when there was no sale or delivery of alcoholic beverages thereon by the permittee or its agent?" *Nelseco Navigation Co.* v. *Department of Liquor Control,* 223 Conn. 908, 612 A.2d 56 (1992).

[4] General Statutes § 30-29 provides: "[A] boat permit shall allow the sale and public consumption of alcoholic liquor by passengers with or without meals upon any one designated boat engaged in the transportation of passengers for hire to or from any port in this state."

the plaintiffs had violated § 30-6-A24 (a) and (c) of the Regulations of Connecticut State Agencies.[5] The trial court upheld the defendant's findings, concluded that responsibility for the disturbance remained with the plaintiffs even though the ship had been leased to a third party and dismissed the appeal.

The plaintiffs appealed to the Appellate Court, which reversed the judgment of dismissal on the ground that the defendant did not have jurisdiction over permitted premises when no liquor was available for sale thereon. The Appellate Court concluded that the defendant had overreached its authority[6] to oversee a permittee's conduct of its liquor business because "[t]he disturbance that occurred here was in no way related to the plaintiffs' exercise of their privilege to dispense liquor." *Nelseco Navigation Co.* v. *Department of Liquor Control*, supra, 618.

The defendant argues that it has a continuous duty to supervise liquor premises whether or not liquor is being sold at any given point in time. The defendant

[5] Section 30-6-A24 of the Regulations of Connecticut State Agencies provides in pertinent part: "(a) No disturbances, brawls, unnecessary noises, including loud and disturbing music, [or] unlawful conduct . . . shall be permitted or suffered upon any permit premises, nor shall such premises be conducted in such a manner as to constitute a nuisance. . . .

"(c) No permittee or his servant or agent shall conduct the permit premises in such a manner as to allow an intoxicated person or persons to loiter thereon."

[6] The defendant derives its power from General Statutes § 30-6, which provides in pertinent part: "(a) There shall be a department of liquor control. The department of liquor control shall have power to enforce the provisions of this chapter, and may make all necessary regulations, subject to the provisions of subsection (b) of this section, for that purpose and for carrying out, enforcing and preventing violation of all or any of the provisions of this chapter, for the inspection of permit premises, for insuring sanitary conditions, for insuring proper, safe and orderly conduct of licensed premises and for protecting the public against fraud or overcharge. . . . It shall have power generally to do whatever is reasonably necessary for the carrying out of the intent of this chapter . . . ."

argues that the liquor control laws give it broad authority to regulate, at all times, not only liquor related activities but liquor premises. We agree.

Justice William Brennan, dissenting in *Moose Lodge No. 107* v. *Irvis,* 407 U.S. 163, 184–85, 92 S. Ct. 1965, 32 L. Ed. 2d 627 (1972), observed that "[l]iquor licensing laws are only incidentally revenue measures; they are primarily pervasive regulatory schemes under which the State dictates and continually supervises virtually every detail of the operation of the licensee's business. Very few, if any, other licensed businesses experience such complete state involvement." This court also has recognized that the state's power and authority over the regulation of the liquor business is broad and pervasive. "Because of the danger to the public health and welfare inherent in the liquor traffic, the police power to regulate and control it runs broad and deep, much more so than the power to curb and direct ordinary business activity. . . . The Liquor Control Act . . . was adopted in the light of these well-recognized principles." (Citations omitted.) *Ruppert* v. *Liquor Control Commission,* 138 Conn. 669, 674, 88 A.2d 388 (1952); see also *Hing Wan Wong* v. *Liquor Control Commission,* 160 Conn. 1, 7, 273 A.2d 709 (1970), cert. denied, 401 U.S. 938, 91 S. Ct. 931, 28 L. Ed. 2d 218 (1971); *Aminti* v. *Liquor Control Commission,* 144 Conn. 550, 552, 135 A.2d 595 (1957). To ensure compliance with the Liquor Control Act; General Statutes §§ 30-1 through 30-113; the department of liquor control is given broad supervisory and disciplinary powers. D. Brennan, "Liquor Control," 54 Conn. B.J. 611, 618 (1980).

The Appellate Court reasoned that "the mere fact that the plaintiffs had a permit, pursuant to which they sold liquor on other occasions, did not extend the defendant's jurisdiction to this nonliquor charter." *Nelseco Navigation Co.* v. *Department of Liquor Con-*

*trol,* supra, 618–19. The Appellate Court relied on the fact that the defendant would not have jurisdiction over similar private parties on nonlicensed ships. It interpreted the defendant's authority as dependent on the conduct transpiring on licensed premises at a particular time, rather than as encompassing the premises themselves, and concluded that a permittee can at times remove the premises from the defendant's jurisdiction by virtue of the activities occurring thereon. Id., 619–20. This construction of the defendant's jurisdiction is too restrictive.

The defendant derives its powers from General Statutes § 30-6, which enables it to enforce the provisions of the Liquor Control Act. The express language of § 30-6 establishes that the defendant shall have the authority for "enforcing and preventing violation of all or any of the provisions of [the act], for the inspection of permit premises, for insuring sanitary conditions, for insuring proper, safe and orderly conduct *of licensed premises* and for protecting the public against fraud or overcharge." (Emphasis added.) The plain language of the statute, therefore, extends to the defendant the authority to control licensed premises.[7] "Where the language of the statute is unambiguous, we are confined

---

[7] The regulations of the department of liquor control, promulgated by the defendant pursuant to General Statutes § 30-6 (a), also reflect the defendant's position that premises are subject to the defendant's continuous jurisdiction as long as the permittee retains a liquor permit. One commentator has noted the myriad of subjects that come under the purview of the defendant's jurisdiction, including "[s]anitation, fire safety, conduct on premises, vending machines, invoices, books, rubber stamps, the furnishing of samples, salaries, bonuses, commissions, expenses and much more." D. Brennan, "Liquor Control," 54 Conn. B.J. 611, 618 (1980). Also, § 30-6-A24 of the Regulations of Connecticut State Agencies specifically addresses the conduct of *permit premises*. See footnote 5. The range of subjects covered by these regulations, many going solely to the management of permit premises, is reflective of the defendant's interpretation of its authority as encompassing not just the conduct of the liquor business but the conduct of the liquor premises as well.

to the intention expressed in the actual words used and we will not search out any further intention of the legislature not expressed in the statute." *Harris Data Communications, Inc.* v. *Heffernan*, 183 Conn. 194, 198, 438 A.2d 1178 (1981).

Neither § 30-6 nor other provisions of the act provide for exceptions wherein premises subject to a liquor permit escape the defendant's supervisory authority, depending on the time of day or whether liquor is actually sold. In fact, other provisions of the act indicate that the defendant's plenary power is not limited to business hours or to the sale of liquor, and that the legislature intended to confer on the defendant the authority to police a wide range of matters related to the liquor business. See, e.g., General Statutes § 30-106 ("[t]he department of liquor control . . . may, *at any time*, enter upon the premises of any permittee to ascertain the manner in which such person conducts his business and to preserve order" [emphasis added]); General Statutes § 30-55a (b) (department of liquor control can suspend a permit for premises emitting noise exceeding standard established by department of environmental protection); General Statutes § 30-91 (defining days and hours when liquor cannot be sold); General Statutes § 30-95 (defining proper means of advertising the sale of liquor); General Statutes § 30-48 (restricting the acquisition of interest in retail liquor permits by any one permittee or backer).

Moreover, "we have elsewhere recognized that the legislature's broad grant of power may be interpreted to include the conferral of such lesser included powers as are necessary to fulfill a legislative mandate. See *Bottone* v. *Westport*, 209 Conn. 652, 670, 553 A.2d 576 (1989)." *Daly* v. *DelPonte*, 225 Conn. 499, 510, 624 A.2d 876 (1993). We consider the legislature's conferral of power to the defendant to ensure the "safe and orderly conduct of licensed premises"; General Statutes § 30-6;

to include the power to regulate the premises even when liquor is not being served. "Because the legislature is always presumed to have created a harmonious and consistent body of law"; id.; the proper construction of any statute must take into account the mandates of related statutes governing the same general subject matter." When we compare the statutory provisions reflecting the numerous matters over which the defendant *has* jurisdiction, we cannot conclude that the defendant lacks jurisdiction under § 30-6 to police disturbances and brawls in places where a permit has been granted, without regard to whether the premises are opened for business in the traditional sense.

The state of Connecticut has exercised practically every available measure of control over the liquor industry while, in the words of one commentator, "preserving a private enterprise system." D. Brennan, supra, 619. Control over the business of liquor includes control over the premises that have been granted the privilege of selling liquor. It is not only the transaction of business involving liquor, but the site on which that business is generally transacted, that is subject to the defendant's authority.

The Appellate Court correctly concluded that the defendant would have no authority over the plethora of private parties on unlicensed ships that may abound on Long Island Sound on any given day. We disagree, however, when it further suggests that the hypothetical case of the *unlicensed* private charter requires that we find that the defendant has no authority over similar parties on *licensed* vessels. When the plaintiffs obtained their liquor permit, the defendant became an active participant in the operation of the ship. *Moose Lodge No. 107* v. *Irvis*, supra. An essential aspect of that partnership is the conduct of the premises themselves. The defendant's statutory authority over con-

duct on the premises continues as long as a permittee has a liquor permit. The permit carries with it an obligation to assure that the premises will be used for purposes consistent with the act at all times. In this regard, the Appellate Court's conclusion that the defendant's responsibility is solely related to the control of the sale of liquor is untenable.[8]

We conclude, therefore, that the defendant had jurisdiction to enforce the provisions of the act in the context of a private party on premises covered by a liquor permit, when there was no sale or delivery of alcoholic beverages thereon by the permittee or its agent. Whether the trial court correctly affirmed the defendant's ruling that violations occurred on the privately chartered vessel is an issue that was never reached by the Appellate Court,[9] and is therefore not before us today. We reverse the judgment of the Appellate Court and remand the case to that court for a resolution of those issues.

The judgment of the Appellate Court is reversed and the case is remanded to that court for further proceedings consistent with this opinion.

In this opinion the other justices concurred.

---

[8] The Appellate Court cites the case of *Moore* v. *Connecticut Liquor Control Commission,* 36 Conn. Sup. 305, 314–15, 418 A.2d 955 (1980), for the proposition that the defendant's jurisdiction is restricted to the control of the sale of liquor. In *Moore,* however, the trial court reached the question of an alleged violation of the act only after it had determined that the defendant had jurisdiction over the premises involved. The court ultimately reasoned that to uphold the defendant's suspension of the plaintiff's permit would constitute an erosion of first amendment rights involving the freedom of artistic expression.

[9] See footnote 2.