# VALERIE P. CRAIG ET AL. *v.* STEVEN DRISCOLL ET AL.
## (SC 16608)

Sullivan, C. J., and Borden, Katz, Palmer and Zarella, Js.

Argued September 12, 2002—officially released February 4, 2003

*Patrick J. Walsh*, with whom, on the brief, was *Richard P. Hastings*, for the appellants (defendant David L. Davis et al.).

*Christopher G. Wall*, for the appellees (named plaintiff et al.).

*Antonio Ponvert III* and *Richard A. Bieder* filed a brief for the Connecticut Trial Lawyers Association et al. as amici curiae.

KATZ, J. Connecticut's Dram Shop Act, General Statutes § 30-102 (act),[1] authorizes a cause of action against a person who sells alcoholic liquor to an intoxicated person who causes injury to another person as a result of his or her intoxication. The principal issue in this certified appeal is whether, notwithstanding the act, the common law recognizes a cause of action for negligent infliction of emotional distress on a bystander against a purveyor of alcoholic liquor for injuries caused by an intoxicated adult patron. The defendants David L. Davis and Hawk's Nest, Inc. (Hawk's Nest),[2] appeal from the Appellate Court's judgment reversing the trial court's partial judgment for the defendants, which was rendered following the granting of their motion to strike certain counts of the amended complaint of the plaintiffs Valerie P. Craig and Samuel Craig.[3] *Craig* v. *Dris-*

---

[1] General Statutes § 30-102 provides: "If any person, by himself or his agent, sells any alcoholic liquor to an intoxicated person, and such purchaser, in consequence of such intoxication, thereafter injures the person or property of another, such seller shall pay just damages to the person injured, up to the amount of twenty thousand dollars, or to persons injured in consequence of such intoxication up to an aggregate amount of fifty thousand dollars, to be recovered in an action under this section, provided the aggrieved person or persons shall give written notice to such seller within sixty days of the occurrence of such injury to person or property of his or their intention to bring an action under this section. In computing such sixty-day period, the time between the death or incapacity of any aggrieved person and the appointment of an executor, administrator, conservator or guardian of his estate shall be excluded, except that the time so excluded shall not exceed one hundred twenty days. Such notice shall specify the time, the date and the person to whom such sale was made, the name and address of the person injured or whose property was damaged, and the time, date and place where the injury to person or property occurred. No action under the provisions of this section shall be brought but within one year from the date of the act or omission complained of."

[2] The plaintiffs commenced this action against Steven Driscoll, Davis, Hawk's Nest and Allstate Insurance Company. Because this appeal pertains only to the counts alleging bystander emotional distress against Davis and Hawk's Nest, we hereafter refer to Davis and Hawk's Nest as the defendants.

[3] The original plaintiffs were Valerie P. Craig, John S. Craig and Samuel Craig, respectively, the mother, father and brother of the decedent, Sarah

*coll*, 64 Conn. App. 699, 781 A.2d 440 (2001). The defendants claim that the Appellate Court improperly concluded that the allegations in the plaintiffs' complaint stated a cause of action for negligent infliction of bystander emotional distress and reckless infliction of bystander emotional distress. We affirm the judgment of the Appellate Court.

The plaintiffs' amended complaint alleged the following relevant facts, as set forth in the Appellate Court opinion.[4] "[B]etween 8:30 p.m. and midnight on May 21, 1996 . . . Steven Driscoll was a patron of The Pub and Restaurant (The Pub), a business located in Norfolk, which is owned by [Hawk's Nest]. . . . Davis was the president of [Hawk's Nest] and the permittee of The Pub. The defendants, through their agents, servants and employees, invited the public to enter The Pub and sold alcoholic beverages to its patrons. At the time in question, Driscoll was intoxicated when the defendants sold him alcoholic beverages, although they knew, or should have known, that Driscoll was an alcoholic who would operate a motor vehicle after leaving The Pub.

"At 12:10 a.m. on May 22, 1996, Sarah Craig was a pedestrian on the west shoulder of Route 272 near its intersection with Route 44 in Norfolk. At that time, Driscoll, who had left The Pub, was operating a motor vehicle south on Route 44 when he caused the vehicle to veer off the roadway and strike Craig. Very shortly thereafter, Valerie P. Craig, the mother of Sarah Craig, and Samuel Craig, the brother of Sarah Craig, arrived

Craig. Not having made a claim of bystander emotional distress against Davis or Hawk's Nest, John S. Craig is not a party to this appeal. See footnote 2 of this opinion. We hereafter refer to Valerie Craig and Samuel Craig as the plaintiffs.

[4] "Because the issues concern the granting of a motion to strike, we are limited to and must accept as true the facts alleged in the plaintiffs' amended complaint dated May 28, 1998. See *Waters* v. *Autuori*, 236 Conn. 820, 822, 676 A.2d 357 (1996)." *Craig* v. *Driscoll*, supra, 64 Conn. App. 702.

at the scene of the accident and viewed Sarah Craig before a substantial change in her condition or location had taken place. Sarah Craig died on May 24, 1996, of the injuries she sustained in the accident. As a result of having witnessed Sarah Craig's severe and substantial injuries, the plaintiffs sustained severe emotional injuries." Id., 702.

On the basis of these alleged facts, the plaintiffs filed an amended sixteen count complaint. In counts three through six, the plaintiffs alleged that the defendants negligently and recklessly had inflicted emotional distress on them as bystanders. In counts seven through twelve, the plaintiffs alleged that the defendants negligently and recklessly had caused loss of consortium. Thereafter, the defendants filed a motion to strike counts three through twelve, which the trial court granted.[5] Specifically, the trial court determined that it was required to grant the motion with respect to counts three through six, pursuant to this court's decision in *Quinnett* v. *Newman*, 213 Conn. 343, 345–46, 568 A.2d 786 (1990), in which this court stated that negligence in selling alcohol was not a viable action at common law because, "the subsequent injury has been held to have been proximately caused by the intervening act of the immoderate consumer whose voluntary and imprudent consumption of the beverage brings about intoxication and the subsequent injury." Thereafter, the plaintiffs moved for judgment on counts three through twelve in order to challenge on appeal the trial court's decision granting the defendants' motion to strike.[6] The

[5] The trial court also granted the defendant Allstate Insurance Company's motion to strike count sixteen. That count, which subsequently was withdrawn, had been brought by John S. Craig to recover under the underinsured motorist provision of his insurance policy and had alleged loss of consortium. That determination by the trial court is not before us in this appeal.

[6] The remaining counts of the plaintiffs' complaint stated causes of action against Driscoll, the driver of the automobile. The Appellate Court noted that, because the trial court's judgment with respect to counts three through twelve disposed of all counts against Davis and Hawk's Nest, it constituted

trial court rendered judgment in accordance with the motion and the plaintiffs thereafter appealed from the judgment to the Appellate Court with respect only to counts three through six, the counts alleging the negligent and reckless infliction of bystander emotional distress.

In the Appellate Court, the plaintiffs claimed that the trial court improperly had granted the defendants' motion to strike, contending, among other things,[7] that: (1) the allegations in their complaint satisfied the bystander emotional distress test, as set forth by this court in *Clohessy* v. *Bachelor*, 237 Conn. 31, 52–54, 675 A.2d 852 (1996); (2) our case law supports the recognition of a common-law cause of action against a seller of alcoholic liquor for negligent service; and (3) their allegations beyond negligent service, including service of alcoholic liquor to a known alcoholic who lacked the capacity to understand fully the risks associated with intoxication, supported an action at common law. *Craig* v. *Driscoll*, supra, 64 Conn. App. 701 and 701–702 n.3. The defendants contended in response that: (1) Connecticut does not recognize a cause of action against third parties for bystander emotional dis-

a final judgment for purposes of appeal. *Craig* v. *Driscoll*, supra, 64 Conn. App. 703 n.4.

[7] Specifically, the plaintiffs raised the following claims in their brief to the Appellate Court: (1) the facts alleged in their complaint supported a claim for bystander emotional distress against the defendant purveyors of alcohol under the doctrine of *Clohessy* v. *Bachelor*, 237 Conn. 31, 675 A.2d 852 (1996); (2) their common-law claim was not precluded by the act because *Quinnett* v. *Newman*, supra, 213 Conn. 343, was wrongly decided; (3) the trial court improperly applied a narrow view of proximate cause under the common law, which has been abandoned by more recent case law; (4) the facts alleged in their complaint beyond negligent service of alcoholic liquor support a common-law negligence action; (5) the court should recognize an exception to the common-law rule for negligent service to a known alcoholic as an extension of the doctrines of *Ely* v. *Murphy*, 207 Conn. 88, 540 A.2d 54 (1988), and *Bohan* v. *Last*, 236 Conn. 670, 674 A.2d 839 (1996); and (6) their allegations beyond negligence supported a common-law cause of action for recklessly furnishing alcoholic liquor.

tress; (2) Connecticut does not recognize a common-law action against a seller of alcoholic liquor for negligent service, and that the act provides the only remedy against a seller for negligent service of alcoholic liquor; and (3) the plaintiffs' allegations are insufficient to state a cause of action for wanton and reckless conduct.

The Appellate Court concluded that the plaintiffs' complaint stated a cause of action for both negligent and reckless infliction of bystander emotional distress. Id., 718, 722. With respect to the plaintiffs' negligence counts, the Appellate Court first noted that the defendants had conceded that the facts alleged in the plaintiffs' complaint satisfied the four part test for establishing negligent infliction of bystander emotional distress under *Clohessy* v. *Bachelor*, supra, 237 Conn. 52–54.[8] *Craig* v. *Driscoll*, supra, 64 Conn. App. 707. Accordingly, the Appellate Court turned to the issue of whether the defendants owed a duty of care to the plaintiffs and whether the facts alleged established causation. Id., 707–13. After noting the significant number of injuries resulting from drunk driving, the Appellate Court determined that "it is foreseeable to a purveyor of alcoholic beverages who serves liquor to an intoxicated person who will operate a motor vehicle that the victim's relatives will witness an accident or its immediate aftermath." Id., 710. The court therefore concluded that the defendants owed a duty of care to the plaintiffs. Id.

The Appellate Court next focused on the question of whether the furnishing of alcohol to an intoxicated

---

[8] In *Clohessy* v. *Bachelor*, supra, 237 Conn. 52–54, we recognized an action at common law for negligent infliction of emotional distress on a bystander, subject to satisfying the following factors: (1) "the bystander must be 'closely related to the injury victim' "; id., 52; (2) "the bystander's emotional injury must be caused by the contemporaneous sensory perception of the event or conduct that causes the injury"; id.; (3) "the injury to the victim must be substantial, resulting either in death or serious physical injury"; id., 53; and (4) the "bystander must have sustained a serious emotional injury . . . ." Id., 54.

person or a known alcoholic can be the proximate cause of injuries inflicted by that person as a result of the intoxication. Id., 710–13. The Appellate Court reasoned that both the act and this court's case law creating exceptions to the common-law rule against liability; see *Bohan* v. *Last*, 236 Conn. 670, 674 A.2d 839 (1996); *Ely* v. *Murphy*, 207 Conn. 88, 540 A.2d 54 (1988); *Kowal* v. *Hofher*, 181 Conn. 355, 436 A.2d 1 (1980); undermined the argument that the negligent or reckless furnishing of alcohol to an intoxicated person or a known alcoholic cannot be the proximate cause of an ensuing injury to an innocent third party. *Craig* v. *Driscoll*, supra, 64 Conn. App. 713. In particular, the Appellate Court noted that, in *Bohan* v. *Last*, supra, 681, and *Ely* v. *Murphy*, supra, 95, this court rejected the notion that a minor's consumption of alcoholic liquor is an intervening act that breaks the chain of causation between the furnishing of alcoholic liquor and the injury. *Craig* v. *Driscoll*, supra, 714–15. The Appellate Court reasoned that alcoholics, like minors, are a separate class of persons who are unable to deal responsibly with the effects of alcohol. Id., 716. As support for this conclusion, the court pointed to General Statutes § 30-86, which imposes criminal penalties on a purveyor "who sells or delivers alcoholic liquor to any minor, or to any intoxicated person, *or to any habitual drunkard, knowing the person to be such an habitual drunkard . . . .*" (Emphasis added.) See *Craig* v. *Driscoll*, supra, 716–17. The Appellate Court also rejected the notion that the act preempted the plaintiffs' ability to recover under the common law, noting that this court expressly had stated in *Kowal* v. *Hofher*, supra, 358–59, that the legislature did not intend for the act to be the exclusive remedy against a purveyor of alcoholic liquor. *Craig* v. *Driscoll*, supra, 715 and 715–16 n.14. In light of these conclusions, the Appellate Court determined that "the allegations of a complaint against purveyors of alcohol who serve

liquor to alcoholics or habitual drunkards who are intoxicated when the purveyor knew or should have known that the alcoholic would operate a motor vehicle are sufficient to state a negligence cause of action and, therefore, to survive a motion to strike." Id., 718.

Finally, with respect to the plaintiffs' counts alleging reckless infliction of bystander emotional distress, the Appellate Court rejected the defendants' contention that these counts merely restated the plaintiffs' negligence allegations. Id., 722. The court noted, inter alia, that, in the counts alleging recklessness, the plaintiffs had alleged that the defendants had instituted a policy to continue to serve intoxicated patrons generally, and Driscoll specifically. Id., 719–22. Accordingly, the Appellate Court reversed the trial court's judgment in favor of the defendants. Id., 723. This certified appeal followed.[9]

On appeal here, the defendants essentially renew the claims that they raised before the Appellate Court. First, they claim that the Appellate Court improperly determined that the plaintiffs' complaint stated a cause of action for negligent infliction of emotional distress on a bystander. The defendants contend that the act and established common-law rules of causation preclude

---

[9] This court granted the defendants' petition for certification to appeal limited to the following issue: "Did the Appellate Court properly conclude that the plaintiffs' complaint stated a cause of action for (1) negligent infliction of emotional distress on a bystander and (2) reckless infliction of emotional distress on a bystander?" *Craig* v. *Driscoll*, 258 Conn. 931, 785 A.2d 228 (2001). Thereafter, the defendants filed a motion for this court to take judicial notice of an action pending in the Superior Court between the same parties to this appeal, in which action the plaintiffs alleged a violation of the act. We granted the motion to take judicial notice of the existence of the action, but denied the motion without prejudice with respect to taking judicial notice of the contents of the file in that action. We also granted an application by the Connecticut Trial Lawyers Association, Mothers Against Drunk Driving Connecticut State Organization and the Brain Injury Association of Connecticut to appear as amici curiae and to file a joint brief, pursuant to Practice Book § 67-7.

such an action. Second, the defendants claim that the Appellate Court improperly expanded the doctrine of bystander emotional distress as set forth in *Clohessy* v. *Bachelor*, supra, 237 Conn. 52–54. Finally, the defendants contend that the Appellate Court improperly determined that the allegations in the plaintiffs' complaint were sufficient to state a cause of action for reckless infliction of emotional distress on a bystander.

"Before addressing the merits of the [defendants'] claim[s], we set forth the standard of review applicable to an appeal challenging the trial court's granting of a motion to strike. A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court. As a result, our review of the court's ruling is plenary. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . [I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . *Vacco* v. *Microsoft Corp.*, 260 Conn. 59, 64–65, 793 A.2d 1048 (2002). Thus, we assume the truth of both the specific factual allegations and any facts fairly provable thereunder. In doing so, moreover, we read the allegations broadly, rather than narrowly. *Parsons* v. *United Technologies Corp.*, 243 Conn. 66, 83, 700 A.2d 655 (1997)." (Internal quotation marks omitted.) *Macomber* v. *Travelers Property & Casualty Corp.*, 261 Conn. 620, 629, 804 A.2d 180 (2002).

I

The defendants contend that the act provides the exclusive remedy against a seller for negligently furnishing alcoholic liquor. The defendants further contend that Driscoll's voluntary consumption of the alcoholic liquor, not the defendants' furnishing of it to him, proximately caused Driscoll's intoxication and the plaintiffs'

ensuing injuries. We address each of these contentions in turn.

### A

In order to determine whether the act provides the exclusive remedy for injuries arising as a result of a purveyor's sale of alcoholic liquor to an intoxicated patron, we begin with an overview of the relevant legal landscape. "At common law it was the general rule that no tort cause of action lay against one who furnished, whether by sale or gift, intoxicating liquor to a person who thereby voluntarily became intoxicated and in consequence of his intoxication injured the person or property either of himself or of another. The reason generally given for the rule was that the proximate cause of the intoxication was not the furnishing of the liquor, but the consumption of it by the purchaser or donee. The rule was based on the obvious fact that one could not become intoxicated by reason of liquor furnished him if he did not drink it." *Nolan* v. *Morelli*, 154 Conn. 432, 436–37, 226 A.2d 383 (1967). Common-law tort claims against purveyors routinely failed, therefore, because the consumption of the liquor was viewed as an intervening act breaking the chain of causation between the purveyor and the ensuing injury caused by the intoxication. *Bohan* v. *Last*, supra, 236 Conn. 676; see *Boehm* v. *Kish*, 201 Conn. 385, 389, 517 A.2d 624 (1986); *Kowal* v. *Hofher*, supra, 181 Conn. 357–58; *Nelson* v. *Steffens*, 170 Conn. 356, 358, 365 A.2d 1174 (1976), overruled on other grounds, *Ely* v. *Murphy*, supra, 207 Conn. 95; *Moore* v. *Bunk*, 154 Conn. 644, 647, 228 A.2d 510 (1967), overruled on other grounds, *Ely* v. *Murphy*, supra, 95.

"In Connecticut, as far back as 1872, it came to be felt that the foregoing common-law rule was to some extent overly harsh and should be modified by statute. Such statutes, which were enacted in numerous other states, came to be known as civil damage or dram shop

acts. . . . Connecticut's first such statute is found in § 8 of chapter 99 of the Public Acts of 1872, and its enactment indicated a knowledge, by the General Assembly, of the foregoing common-law rule. The 1872 act gave a cause of action against a seller who sold intoxicating liquor to a person who thereby became intoxicated for 'any damage or injury to any other person, or to the property of another' done by the intoxicated person 'in consequence' of his intoxication. Thus, this act, in situations where it was applicable, displaced the common-law rule that the proximate cause of intoxication was not the furnishing of the liquor but its consumption." (Citation omitted.) *Nolan* v. *Morelli*, supra, 154 Conn. 437. In subsequent amendments to the act, the legislature expanded liability by including sales by the purveyor's agents and by eliminating the requirement of proof of a causal connection between the selling of the alcoholic liquor and the intoxication that caused the injury.[10] Id., 438–39; *Pierce* v. *Albanese*, 144 Conn. 241, 246–47, 129 A.2d 606, appeal dismissed, 355 U.S. 15, 78 S. Ct. 36, 2 L. Ed. 2d 21 (1957); *London & Lancashire Indemnity Co.* v. *Duryea*, 143 Conn. 53, 56–57, 119 A.2d 325 (1955).

The act, therefore, modified the common-law rule. A common-law rule, however, may be "subject to both legislative and judicial modification." *Ascuitto* v. *Farricielli*, 244 Conn. 692, 698, 711 A.2d 708 (1998). Accordingly, the issue in this case is whether the legislature, by creating an affirmative remedy, has manifested an intention to occupy the field or whether a common-law remedy would conflict with or frustrate the purpose of the act, so as to stay our hand in recognizing an action

---

[10] The Public Acts of 1882, c. 107, pt. VI, § 12, restricted liability to sales of liquor "to be drunk on the premises . . . . " That restriction, however, was eliminated when the act in its present form was adopted in the post-Prohibition period. *Nolan* v. *Morelli*, supra, 154 Conn. 438.

at common law.[11] See *Thibodeau* v. *Design Group One Architects, LLC*, 260 Conn. 691, 709, 802 A.2d 731 (2002); *Allard* v. *Liberty Oil Equipment Co.*, 253 Conn. 787, 800, 756 A.2d 237 (2000); *Jones* v. *Mansfield Training School*, 220 Conn. 721, 726, 601 A.2d 507 (1992); cf. *Bauer* v. *Waste Management of Connecticut, Inc.*, 234 Conn. 221, 232, 662 A.2d 1179 (1995) ("[A] local ordinance is preempted by a state statute whenever the legislature has demonstrated an intent to occupy the entire field of regulation on the matter . . . or . . . whenever the local ordinance irreconcilably conflicts with the statute. . . . Whether an ordinance conflicts with a statute . . . can only be determined by reviewing the policy and purposes behind the statute and measuring the degree to which the ordinance frustrates the achievement of the state's objectives." [Internal quotation marks omitted.]); *Manchester Sand & Gravel Co.* v. *South Windsor*, 203 Conn. 267, 276–77, 524 A.2d 621 (1987) ("[w]hen the state has, by statute, demonstrated an intent to occupy a field of regulation . . . a local ordinance that conflicts with or frustrates the purpose of the legislature in enacting the statute cannot stand").

In *Kowal* v. *Hofher*, supra, 181 Conn. 355, this court was confronted with precisely the same preemption issue as in the present case. The plaintiff's complaint in *Kowal* had alleged that the defendants, a restaurant owner and his employees, "served alcoholic beverages

---

[11] Although typically the issue presented is whether a statute has abrogated a *recognized* common-law action or theory; see, e.g., *Thibodeau* v. *Design Group One Architects, LLC*, 260 Conn. 691, 693–94, 802 A.2d 731 (2002); *Daily* v. *New Britain Machine Co.*, 200 Conn. 562, 571–72, 512 A.2d 893 (1986); *Dzenutis* v. *Dzenutis*, 200 Conn. 290, 300–301, 512 A.2d 130 (1986); *State* v. *Nugent*, 199 Conn. 537, 547, 508 A.2d 728 (1986); the principles applied in those instances equally apply to cases, such as the present one, in which the issue is whether the legislature's action preempts this court's common-law authority to recognize a cause of action not in existence at the time of the statute's enactment.

to the driver of the automobile which collided with the automobile driven by the plaintiff's decedent, while the driver was already in an intoxicated condition, and that the driver then operated his vehicle in a negligent manner causing the collision and injuries which resulted in death." Id., 356. The plaintiff therein alleged liability in three counts: a violation of the act; common-law negligence; and wanton and reckless conduct. Id. The trial court granted the defendants' motion to strike the second and third counts, and the issue on appeal before this court was "whether the plaintiff's remedies are limited to those provided by the [act]." Id., 357.

The court in *Kowal* explained: "There is no specific provision in this statute which bars a common-law action or otherwise preempts the field of liability of a seller of liquor. This statute, which requires no showing of a causal relation between the sale of intoxicating liquor and the subsequent injury, was enacted to fill the void created by the old rule's disallowance of any action against the barkeeper grounded in negligence. The underlying premise of the [act] is that it is in the public interest to compensate citizens of this state for injuries received when a vendor sells alcohol to an intoxicated person who in turn brings about injuries as a result of such intoxication. *There is absolutely no indication, however, that where causation is adequately traced back to the barkeeper who served an intoxicated person an alcoholic beverage the legislature, nevertheless, intended the [act] to be the injured plaintiff's exclusive remedy. . . . If the plaintiff has no cause of action against the bartender for negligence, it is not the statute but rather the common law which denies the plaintiff a right of recovery.*" (Citations omitted; emphasis added.) Id., 358–59. Nonetheless, this court applied the common-law rule to preclude the plaintiff's claim in negligence; id., 359; but determined that the plaintiff's claim based on reckless conduct

could proceed. Id., 360–62. The court premised that conclusion "primarily on the notion that one ought to be required, as a matter of policy, to bear a greater responsibility for consequences resulting from his act when his conduct is reckless or wanton than when his conduct is merely negligent." Id., 361.

Ten years after the *Kowal* decision, in *Quinnett* v. *Newman*, supra, 213 Conn. 344, this court concluded that the act precludes a common-law negligence action against a purveyor for service of alcoholic liquor to an adult patron who, as a result of his intoxication, injures another. Citing the numerous amendments over the long history of the act and concluding that this court must honor the legislature's clear expression of public policy; id., 347–48; the majority of the court, with two justices dissenting, held that the legislature had "filled the field through the enactment of . . . § 30-102." Id., 344. That decision does not, however, distinguish or, indeed, even mention the court's holding in *Kowal*.

Viewing the decisions together, and in the absence of any principled distinction in the context of the preemption issue, differentiating between tort actions against purveyors for negligently serving alcoholic liquor to intoxicated persons and actions alleging reckless service, it is apparent that *Quinnett* cannot be reconciled with this court's holding in *Kowal*. As between the two decisions, we conclude that *Kowal* more properly reflects our preemption jurisprudence.

We first note that there is nothing in the act to suggest that the legislature intended to occupy the field, either in its language or its legislative history. See *Manchester Sand & Gravel Co.* v. *South Windsor*, supra, 203 Conn. 276. We next consider the intervening ten years between the decisions in *Kowal* in 1980 and *Quinnett* in 1990. Specifically, we note that, after the *Kowal* decision, the legislature did not amend the act to clarify its intention

to make the act the exclusive remedy; cf. General Statutes § 31-284 (Workers' Compensation Act exclusivity provision); General Statutes § 52-572n (product liability claims exclusivity provision); General Statutes § 52-557n (citing defective highway statute, General Statutes § 13a-149, as exclusive remedy against political subdivision); cf. also *Jones* v. *Mansfield Training School*, supra, 220 Conn. 729 (noting import of legislature's failure to designate statute as exclusive remedy); despite the fact that the legislature amended the act twice during this period. See Public Acts 1986, No. 86-338, § 7; Public Acts 1987, No. 87-227, § 11.[12]

We also note, however, the legislative silence, regarding § 31-102, in the twelve years following *Quinnett*, but draw no reliable inferences from the legislature's failure to respond to our holding in that case. Because *Quinnett* neither overruled *Kowal* nor addressed its holding, and because, as we have noted, the decisions rationally cannot be reconciled on the question of legislative preemption, the legislative silence could just as reliably reflect an implied adoption of *Kowal* as of *Quinnett*. We, therefore, approach the question in this case unfettered by any notion that the legislature has indicated a policy preference in either direction.

Finally, we note that recognition of a common-law negligence action neither conflicts with the act nor thwarts its underlying purpose. Cf. *Thibodeau* v. *Design Group One Architects, LLC*, supra, 260 Conn. 717–18 (limited exemption for small employers in comprehensive employment discrimination scheme preempts common-law discrimination remedy). The act provides a means of recovery for plaintiffs who are unable to prove causation and culpability, subject to a statutory limita-

---

[12] The 1986 and 1987 amendments, respectively, added and deleted a subsection establishing a rebuttable presumption that the last seller of liquor was solely liable.

tion on damages. See General Statutes § 30-102 ($20,000 maximum recovery for individuals; $50,000 in aggregate). To prevail, a plaintiff simply must prove: (1) the sale of the alcoholic liquor; (2) that the sale was to an intoxicated person; and (3) that the intoxicated person caused injury to another's person or property as a result of his or her intoxication. *Nelson* v. *Steffens*, supra, 170 Conn. 360. Accordingly, the act covers all sales of liquor that result in an intoxicated person causing injury, irrespective of the bar owner's knowledge or state of mind. The act thereby provides an action in strict liability, both without the burden of proving the element of scienter essential to a negligence action and without the benefit of the broader scope of recovery permitted under such an action. It sets, in essence, a minimum recovery opportunity for persons injured as a result of the sale of liquor to an intoxicated person. By setting a *floor*, however, the legislature did not also intend to be setting a *ceiling*—and we are free, therefore, to exercise our common-law authority to increase the recovery opportunity in circumstances where the state of mind of the bar owner warrants it.

A tort action would provide an avenue to recover full compensation, but only upon establishing the requisite culpability and causation. In this manner, the tort action would supplement, rather than conflict with, the act. Cf. *Skorpios Properties, Ltd.* v. *Waage*, 172 Conn. 152, 156, 374 A.2d 165 (1976) (statute "provided a new, affirmative remedy, and contained no express or implied intention to abrogate or supersede the common-law remedy available to the plaintiff; it was an additional, but not an exclusive, remedy"). Moreover, the legislature enacted the act to alleviate the harsh effects of the common-law rule on innocent third parties. *Nolan* v. *Morelli*, supra, 154 Conn. 437. By recognizing a common-law negligence action for injuries caused by an intoxicated adult patron against purveyors of alcoholic

liquor, we would not frustrate the achievement of the state's objectives; *Bauer* v. *Waste Management of Connecticut, Inc.*, supra, 234 Conn. 232; rather, we would further those objectives.[13]

The soundness of *Quinnett* is therefore seriously undermined. Accordingly, we conclude that the holding of *Quinnett* v. *Newman,* supra, 213 Conn. 353, that the act precludes a common-law negligence action against a purveyor for service of alcoholic liquor to an adult patron who, as a result of his intoxication, injures another, must be overruled.[14] We recognize that "[t]he doctrine of stare decisis counsels that a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it." (Internal quotation marks omitted.) *State* v. *Ferguson,* 260 Conn. 339, 367 n.18, 796 A.2d 1118 (2002). Indeed, we are cognizant of the fact that adhering to our precedent limiting the right to bring a common-law action solely for recklessness pursuant to *Kowal* might serve the ends of stare decisis—certainty and predictability. We view, however, as atavistic the notion that, on those grounds alone, we should refuse to acknowledge an

[13] Moreover, as former Chief Justice Peters noted in her dissent in *Quinnett* v. *Newman,* supra, 213 Conn. 353, the majority's holding in that case gives rise to an anomalous distinction between providers of alcohol who are merchants and other providers such as the social host—the former being shielded by the act from liability above the statutory limitation on recovery; the latter being unprotected and subject to limitless liability under the common law. See, e.g., *Ely* v. *Murphy,* supra, 207 Conn. 88.

[14] We recognize that there is language in *Nolan* v. *Morelli,* supra, 154 Conn. 439–40, that suggests that preemption may have been a basis for rejecting the plaintiff's negligence claim in that case. The facts in that case are readily distinguishable, however, from those presented in either *Kowal* or *Quinnett.* See *Quinnett* v. *Newman,* supra, 213 Conn. 351 *(Peters, C. J.,* dissenting) (noting importance of distinction between circumstances in each case). In *Nolan,* the plaintiff had sought to recover on behalf of the intoxicated person himself. *Nolan* v. *Morelli,* supra, 434. Although we do not address directly in this case the question of whether to recognize an action at common law on behalf of an intoxicated person against a seller of alcoholic liquor, our resolution of the preemption issue does not turn on that distinction.

incongruity in our case law. See *Conway* v. *Wilton*, 238 Conn. 653, 660, 680 A.2d 242 (1996). "The arguments for adherence to precedent are least compelling, furthermore, when the rule to be discarded may not be reasonably supposed to have determined the conduct of the litigants . . . . *Hopson* v. *St. Mary's Hospital*, 176 Conn. 485, 496 n.5, 408 A.2d 260 (1979), quoting B. Cardozo, [The Nature of the Judicial Process (1921)] p. 151. . . . Rarely do parties contemplate the consequences of tortious conduct, and rarely if at all will they give thought to the question of what law would be applied to govern their conduct if it were to result in injury." (Internal quotation marks omitted.) *Conway* v. *Wilton*, supra, 661.[15] We conclude, therefore, that the act does not occupy the field so as to preclude a common-law action in negligence against a purveyor of alcoholic beverages for service of alcoholic liquor to an adult patron who, as a result of his intoxication, injures another.

## B

Having concluded that the act does not occupy the field, thus reaffirming the holding of *Kowal*, we next determine whether we should, as a matter of our common-law authority, recognize an action against a purveyor who negligently serves alcoholic liquor to an adult patron who, as a result of his intoxication, injures another. We begin by setting forth the well established rules of our negligence jurisprudence. In order to prevail on a negligence claim, a plaintiff must establish that the defendant's conduct "legally caused" the injuries, that is, that the conduct both caused the injury in fact and proximately caused the injury. *Paige* v. *St.*

---

[15] We appreciate the concern that this court should defer to the legislature because of the importance of this issue as a matter of public policy. Relinquishing the field to the legislature in an area in which this court has common-law authority, however, creates a result no different in effect than if we were to have determined that the act preempts our authority.

*Andrew's Roman Catholic Church Corp.*, 250 Conn. 14, 24–25, 734 A.2d 85 (1999); *Wu* v. *Fairfield*, 204 Conn. 435, 438, 528 A.2d 364 (1987).

"The test for cause in fact is, simply, would the injury have occurred were it not for the actor's conduct." *Kowal* v. *Hofher*, supra, 181 Conn. 359. The test of proximate cause is whether the defendant's conduct is a "substantial factor" in producing the plaintiff's injury. The substantial factor test asks, "whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's negligence." *Merhi* v. *Becker*, 164 Conn. 516, 521, 325 A.2d 270 (1973). This requirement "tempers the expansive view of causation [in fact] . . . by the pragmatic . . . shaping [of] rules which are feasible to administer, and yield a workable degree of certainty. . . . Remote or trivial [actual] causes are generally rejected because the determination of the responsibility for another's injury is much too important to be distracted by explorations for obscure consequences or inconsequential causes. . . . In determining proximate cause, the point beyond which the law declines to trace a series of events that exist along a chain signifying actual causation is a matter of fair judgment and a rough sense of justice. . . .

"The substantial factor test, in truth, reflects the inquiry fundamental to all proximate cause questions; that is, whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's negligence. . . . In applying this test, we look from the injury to the negligent act complained of for the necessary causal connection. . . .

"The scope of the risk analysis of proximate cause similarly applies where . . . the risk of harm created by the defendant's negligence allegedly extends to an

intervening[16] criminal act by a third party. . . . [We have] consistently adhered to the standard of 2 Restatement (Second), Torts § 442B (1965) that a negligent defendant, whose conduct creates or increases the risk of a particular harm and is a substantial factor in causing that harm, is not relieved from liability by the intervention of another person, except where the harm is intentionally caused by the third person and is not within the scope of the risk created by the defendant's conduct. . . . The reason [for the general rule precluding liability where the intervening act is intentional or criminal] is that in such a case the third person has deliberately assumed control of the situation, and all responsibility for the consequences of his act is shifted

[16] "The terms intervening cause and superseding cause have been used interchangeably. See, e.g., *Corey* v. *Phillips*, 126 Conn. 246, 253–56, 10 A.2d 370 (1939). The Restatement of Torts makes clear that the doctrine is properly referred to as superseding cause, and that it embodies within it the concept of an intervening force. 2 Restatement (Second), Torts §§ 440 through 453 [1965].

"The function of the doctrine of superseding cause is not to serve as an independent basis of liability, regardless of the conduct of a third party whose negligent conduct may have contributed to the plaintiff's loss. The function of the doctrine is to define the circumstances under which responsibility may be shifted entirely from the shoulders of one person, who is determined to be negligent, to the shoulders of another person, who may also be determined to be negligent, or to some other force. A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about. Id., § 440.

"If the third person's negligence is determined to be a superseding cause of the plaintiff's injury, that negligence, rather than the negligence of the party attempting to invoke the doctrine of superseding cause, is said to be the sole proximate cause of the injury. . . . The doctrine serves as a dividing line between two closely related factual situations: where two forces combine to cause the plaintiff's injuries; and where one force intervenes in such a way as to relieve a negligent defendant from liability. See generally [id.] §§ 440 through 453. Thus, the doctrine of superseding cause serves as a device by which one admittedly negligent party can, by identifying another's superseding conduct, exonerate himself from liability by shifting the causation element entirely elsewhere." (Citations omitted; internal quotation marks omitted.) *Wagner* v. *Clark Equipment Co.*, 243 Conn. 168, 178–79, 700 A.2d 38 (1997).

to him. . . . Such tortious or criminal acts may in themselves be foreseeable, [however] and so within the scope of the created risk . . . . *Doe* v. *Manheimer*, 212 Conn. 748, 757–59, 563 A.2d 699 (1989), overruled in part on other grounds, *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 608, 662 A.2d 753 (1995)." (Internal quotation marks omitted.) *Craig* v. *Driscoll*, supra, 64 Conn. App. 711–12. To act as an intervening cause, the conduct must "entirely [break] the causal connection between the defendant's conduct and the plaintiff's injuries so as to be the sole proximate cause of those injuries." *Wagner* v. *Clark Equipment Co.*, 243 Conn. 168, 182, 700 A.2d 38 (1997).

The defendants argue that negligently providing alcoholic beverages to an already intoxicated patron or a patron known to them to be an alcoholic *cannot* be the proximate cause of subsequent injuries caused by the intoxicated person. Indeed, historically, a claim in negligence against the purveyor has failed on the theory that the injury was "proximately caused by the intervening act of the immoderate consumer whose voluntary and imprudent consumption of the beverage [brought] about intoxication and the subsequent injury." (Internal quotation marks omitted.) *Bohan* v. *Last*, supra, 236 Conn. 676. In other words, we effectively *presumed*, by ruling as a matter of law, that the ingestion of alcohol by the patron acted as an intervening force sufficient to shift the entire causation element to some entity or entities other than the purveyor. That presumption, however, runs counter to our proximate cause jurisprudence generally, in which a tortious act by a third party does not act as an intervening force if such acts are within the scope of the risk created.

Indeed, in recognition of these fundamental principles of our proximate cause jurisprudence, we have made significant inroads in this specific area. See id., 681; *Ely* v. *Murphy*, supra, 207 Conn. 97; *Kowal* v.

*Hofher*, supra, 181 Conn. 362. This case law "epitomizes the judicial recognition of the substantial causal relationship between the negligent service of alcoholic beverages and the injuries that occur as the result of drunkenness." *Craig* v. *Driscoll*, supra, 64 Conn. App. 713. Accordingly, we expressly reject the claim that a purveyor who provides alcoholic beverages to an already intoxicated patron or a patron known to him to be an alcoholic *cannot*, as a matter of law, be the proximate cause of subsequent injuries caused by the intoxicated patron.

1

We turn, therefore, to our proximate cause jurisprudence. In *Kowal* v. *Hohfer*, supra, 181 Conn. 360–61, this court held that the plaintiff properly could bring a cause of action against a restaurant owner and permittee, his agents and employees, for recklessly serving alcoholic beverages to a patron who was already intoxicated and who, thereafter, operated his vehicle in a negligent manner causing the resulting injuries to the plaintiff's decedent. That holding was premised on the court's conclusion that the policy considerations that justify protecting a vendor or social host from common-law liability for the injurious consequences of negligent conduct in the sale or serving of alcoholic beverages did not apply with respect to wanton and reckless misconduct. Id. The proximate cause test established by this court, however, is not predicated on the theory upon which an injured party endeavors to impose tort liability.

As we have stated in other contexts: "The circumstances under which this [causation shift] may take place have been well-defined in our case law. Even if a plaintiff's injuries are in fact caused by a defendant's negligence, a superseding cause may break that causal connection if it so entirely supersedes the operation of

the defendant's negligence that it alone, *without his negligence contributing thereto in any degree*, produces the injury; or it must be the non-concurring culpable act of a human being who is legally responsible for such act. . . . If a defendant's negligence was *a substantial factor* [as that term is defined] in producing the plaintiff's injuries, the defendant would not be relieved from liability for those injuries even though another force concurred to produce them. . . . Whether a superseding cause was of such a character as to prevent an act of negligence of the defendant from being a substantial factor in producing a plaintiff's injury is ordinarily a question of fact." (Citations omitted; emphasis added; internal quotation marks omitted.) *Wagner* v. *Clark Equipment Co.*, supra, 243 Conn. 180.

"It is clear that the furnishing of an alcoholic beverage to an intoxicated person may be the proximate cause of injuries inflicted by that individual upon a third person. If such furnishing is a proximate cause, it is so because the consumption, resulting intoxication, and injury-producing conduct are foreseeable intervening causes, or at least the injury-producing conduct is one of the hazards which make such furnishing negligent." *Slicer* v. *Quigley*, 180 Conn. 252, 267, 429 A.2d 855 (1980) (*Bogdanski, J.*, dissenting), overruled on other grounds, *Ely* v. *Murphy*, supra, 207 Conn. 95. This is true irrespective of whether the degree of care by the purveyor was negligent or reckless. That is to say, the issue of whether intoxication by the person to whom the alcohol has been furnished acts as a superseding cause does not depend upon the state of mind of the person supplying the alcohol. In deciding this issue, therefore, we discern no principled distinction between the purveyor who acts negligently and the one who acts recklessly when furnishing liquor in relation to whether its consumption by a negligent driver is an intervening act breaking the chain of causation.

2

Our prior cases also have recognized the substantial causal relationship between the negligent service of alcoholic beverages and the injuries that occur as the result of drunkenness. In *Ely* v. *Murphy*, supra, 207 Conn. 88, in the context of the liability of social hosts who allegedly had provided alcohol to underage guests at a graduation party, this court reexamined the logic of its previous decisions rejecting a common-law action in negligence, and concluded that the hosts could be liable for injuries caused by one of the *minor* guests, who, after leaving the party, operated an automobile while intoxicated and killed another guest. The court expressed doubt about the logic, when applied to a minor, of the common-law presumption that intoxication results from the voluntary conduct of a person who has exercised a knowing and intelligent choice to consume intoxicating liquor. Id., 93–94. Further, the court found it persuasive that our state's public policy, as manifested in numerous relevant civil and criminal statutes, "reflect[s] a continuing and growing public awareness and concern that children as a class are simply incompetent by reason of their youth and inexperience to deal responsibly with the effects of alcohol." Id., 94.

Thereafter, in *Bohan* v. *Last*, supra, 236 Conn. 671, we concluded that *purveyors* of alcohol to minors at a bar likewise may be liable in negligence to such minors, or to innocent third parties. "Wherever minors become intoxicated, whether in a bar or in a private residence, they are unlikely to appreciate fully the consequences of their intoxication. Wherever minors become intoxicated, their subsequent intoxicated misconduct creates a risk of personal injury and death not only to themselves, but also . . . to innocent third parties." Id., 678. These cases, therefore, recognize that the chain of causation between the negligent provision

of alcoholic liquor and foreseeable injuries resulting therefrom is not broken by the actions of a third person who is unable fully to appreciate the risks of his or her actions.

3

Finally, because this is an issue of our common-law jurisprudence, we examine the issue taking into account the relevant policy considerations. Specifically, we are mindful of the horrors that result from drinking and driving, horrors to which we unfortunately have grown more accustomed.[17] In light of the staggering statistics concerning alcohol-related fatalities, Justice Bogdanski's call to action in his dissent in *Slicer* v.

---

[17] The National Highway Traffic Safety Administration cites the following statistics for the nation and Connecticut:

In 2000, 16,653 people died in alcohol-related motor vehicle accidents on our nation's highways, an average of one alcohol-related death every thirty-two minutes. Thirty-one percent of these accidents involved intoxicated persons with blood alcohol concentration of 0.10 or greater; in those accidents, almost one third of the fatalities were passengers, nonintoxicated drivers or nonoccupants.

In 2000, approximately 310,000 people were injured in alcohol-related motor vehicle accidents, an average of one person injured every two minutes.

In 2000, it was estimated that about three in every ten Americans will be involved in an alcohol-related crash at some time in their lives.

In 2000, 158 people died in Connecticut in alcohol-related motor vehicle accidents, constituting 46 percent of all traffic fatalities. Connecticut had one of the highest alcohol-related traffic fatality rates in the nation, with only nine states having higher rates. National Highway Traffic Safety Administration, Traffic Safety Facts 2000, at www.nhtsa.dot.gov/people/injury/alcohol/facts.htm.

The National Highway Traffic Safety Administration also cited these additional statistics:

In 1998, alcohol-related traffic accidents cost Connecticut more than $900 million, including more than $300 million in monetary costs and more than $600 million in quality of life costs.

In 1998, the average cost to Connecticut per alcohol-related fatality was $4.2 million. The estimated cost per injured survivor was on average $105,000. National Highway Traffic Safety Administration, Impaired Driving in Connecticut, at www.nhtsa.dot.gov/people/injury/alcohol/CT.htm/facts.htm.

*Quigley*, supra, 180 Conn. 271–73, merits repeating: "When most people walked and few had horses or carriages, or even in the days when the horse and buggy was a customary mode of travel, it may have been that the common law rule of non-liability arising from the sale of liquor to an intoxicated person was satisfactory. But the situation then and the problem in today's society of the imbiber going upon the public highways and operating a machine that requires quick response of mind and muscle and capable of producing mass death and destruction are vastly different. *Meade* v. *Freeman*, 93 Idaho 389, 400, 462 P.2d 54 (1969) [*Parther, D. J.*, concurring in part, dissenting in part]. . . .

"The time has arrived when this court should again exercise its inherent power as the guardian of the common law and hold upon general principles of common-law negligence a person, who, when he knows or should have known a person is intoxicated, sells or gives intoxicating liquor to such a person, is guilty of a negligent act; and if such negligence is a substantial factor in causing harm to a third person, he should be liable with the drunken person under our comparative-negligence doctrine. Conceded, the common law in this state for over one hundred years has been to the contrary . . . but the basis upon which these cases were decided is sadly eroded by the shift from commingling alcohol and horses to commingling alcohol and horsepower. [*Garcia* v. *Hargrove*, 46 Wis. 2d 724, 737, 176 N.W.2d 566 (1970) (Hallows, C. J., dissenting).]" (Citations omitted; internal quotation marks omitted.)

"The adaptability of the common law to the changing needs of passing time has been one of its most beneficent characteristics." (Internal quotation marks omitted.) *Jolly, Inc.* v. *Zoning Board of Appeals*, 237 Conn. 184, 196, 676 A.2d 831 (1996); accord *State* v. *Troupe*, 237 Conn. 284, 303–304, 677 A.2d 917 (1996). Accordingly, "[i]nherent in the common law is a dynamic prin-

ciple which allows it to grow and to tailor itself to meet changing needs within the doctrine of stare decisis, which, if correctly understood, was not static and did not forever prevent the courts from reversing themselves or from applying principles of common law to new situations as the need arose. If this were not so, we must succumb to a rule that a judge should let others long dead and unaware of the problems of the age in which he lives, do his thinking for him. Mr. Justice Douglas, Stare Decisis, 49 Columbia Law Review (1949), 735, 736." (Internal quotation marks omitted.) *Slicer* v. *Quigley,* supra, 180 Conn. 273 (*Bogdanski, J.,* dissenting).

We conclude that sensible reform is appropriate in this area. The issue of whether to recognize a common-law cause of action in negligence is a matter of policy for the court to determine based on the changing attitudes and needs of society. In making such a determination, we are mindful that the law of torts involves the allocation of losses arising out of human conduct, and its purpose is to adjust these losses by affording compensation for injuries sustained by one person as a result of the conduct of another. W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 1, p. 6. It seems self-evident that the serving of alcoholic beverages to an obviously intoxicated person by one who knows or reasonably should know that such intoxicated person intends to operate a motor vehicle creates a reasonably foreseeable risk of injury to those on the roadways.[18] Simply put, one who serves alcoholic beverages under such

---

[18] Indeed, the legislature has recognized the severity of the risks associated with the service of alcoholic liquor to persons not able to exercise reasonable judgment. See General Statutes § 30-86, which provides in relevant part: "Any permittee or any servant or agent of a permittee who sells or delivers alcoholic liquor to any minor, or to any intoxicated person, or to any habitual drunkard, knowing the person to be such an habitual drunkard, shall be subject to the penalties of section 30-113. . . ."

circumstances fails to exercise reasonable care and therefore may be held liable in negligence.[19]

Therefore, in conclusion, in recognition of fundamental principles of our proximate cause jurisprudence, and our case law epitomizing the judicial recognition of the substantial causal relationship between the negligent service of alcoholic beverages and the injuries that occur as the result of drunkenness, we expressly reject the claim that a purveyor who provides alcoholic beverages to an already intoxicated patron or a patron known to him to be an alcoholic *cannot*, as a matter of law, be the proximate cause of subsequent injuries caused by the intoxicated person. As recognized in both dissents in *Quinnett*, it is now time to discontinue the "fiction that the behavior of anyone who is under the influence of alcohol is *automatically, as a matter of law,* an intentional intervening act that relieves the liability of a vendor of alcohol even though the vendor's negligence is otherwise established."[20] (Emphasis

---

[19] The dissent suggests that, in some instances, permitting common-law recovery may lead to an "injustice" when the purveyor is unable to pay its apportionment of the damages assigned, thus shifting liability from the intoxicated driver, but leaving the victim with less than full recovery. See footnote 7 of the dissenting opinion. Although such a situation is in the realm of possibilities, we note that it is as likely, if not more so, that the intoxicated driver will be unable to pay the full proportion of damages assigned to him due to insufficient insurance coverage. See General Statutes § 38a-336 (uninsured and underinsured motorist coverage).

[20] Whether the defendants actually knew or should have known that Driscoll was intoxicated, that he was an alcoholic, and that he would operate a motor vehicle after leaving The Pub, as the plaintiffs have alleged as their basis for recovering in negligence, are questions of fact. See *Sanders* v. *Officers Club of Connecticut, Inc.*, 196 Conn. 341, 349, 493 A.2d 184 (1985). The dissent suggests that we clarify the precise standard of proof required for a plaintiff to prevail under the common law. We note first that the elements of proof required in this context are no different than under our well established common-law jurisprudence. Indeed, one of the effects of this decision is that it reconciles our approach in this context with any other negligence action. We further note that, in our view, it would be ill-advised to detail here what proof is required, because the facts under each case will dictate what establishes negligence.

added.) *Quinnett* v. *Newman*, supra, 213 Conn. 352 (*Peters, C. J.*, dissenting); see id., 354 (*Hull, J.*, dissenting).

## II

The defendants also contend that the Appellate Court improperly determined that the allegations in the plaintiffs' complaint were sufficient to state a cause of action for reckless infliction of emotional distress on a bystander.[21] Essentially, they contend that, because the plaintiffs use the same language to allege negligent and reckless conduct, the allegations are insufficient. We disagree.

The plaintiffs' complaint, in the counts for reckless infliction of bystander emotional distress, alleged the following facts: "The collision, the injuries to Sarah Craig, and the severe emotional injury sustained by [the plaintiffs], were caused by the willful, wanton and/or reckless actions of the [defendants] in one or more of the following ways: (a) in that [Davis] instituted a policy in which he required one or more of his employees or the employees of The Pub or [Hawk's Nest] to continue to serve alcohol to patrons who were intoxicated and instructed them not to refuse service to such patrons, said policy resulting in the service of alcohol to [Driscoll] on May 21, 1996, while he was in an intoxicated state . . . (b) in that [Davis] instituted a policy with regard to [Driscoll] in particular in which he required one or more of his employees, or the employees of The Pub or [Hawk's Nest] to continue to serve alcohol to

---

[21] The defendants also claim that the Appellate Court improperly expanded the doctrine of bystander emotional distress under *Clohessy* v. *Bachelor*, supra, 237 Conn. 52–54. Specifically, they contend that, in light of our prior case law precluding a cause of action predicated upon the negligent service of alcohol, the plaintiffs cannot recover for the negligent infliction of emotional distress on a bystander. Because this claim is resolved by our decision to recognize a common-law negligence action against a purveyor of alcoholic liquor, we do not address it separately.

Driscoll even if intoxicated and not to refuse service
to Driscoll, said policy resulting in the service of alcohol
to [Driscoll] on May 21, 1996, while he was in an intoxi-
cated state . . . (c) in that [the defendants] served
alcoholic beverages to [Driscoll] when [they] knew that
[Driscoll] was intoxicated and that he would be
operating a motor vehicle subsequent to consuming
said liquor . . . (d) in that [the defendants] were in
particular aware of the excessive drinking habits of
[Driscoll] and the fact that [Driscoll] had driven while
intoxicated in the past, yet they continued to serve
alcohol to him on May 21, 1996, while in an intoxicated
state . . . [and] (e) in that [the defendants] provided
liquor to [Driscoll] when he was visibly intoxicated, and
knowing that by doing so, [Driscoll] would be placing
others, such as the [plaintiffs'] decedent, at risk."

We are guided by the Appellate Court's thoughtful
statement of our relevant case law in deciding this issue.
"To determine whether the plaintiffs' amended com-
plaint states a cause of action sounding in recklessness,
we look first to the definitions of wilful, wanton and
reckless behavior. Recklessness is a state of conscious-
ness with reference to the consequences of one's acts.
. . . It is more than negligence, more than gross negli-
gence. . . . The state of mind amounting to reckless-
ness may be inferred from conduct. But, in order to
infer it, there must be something more than a failure to
exercise a reasonable degree of watchfulness to avoid
danger to others or to take reasonable precautions to
avoid injury to them. . . . Wanton misconduct is reck-
less misconduct. . . . It is such conduct as indicates
a reckless disregard of the just rights or safety of others
or of the consequences of the action. . . .

"While we have attempted to draw definitional dis-
tinctions between the terms wilful, wanton or reckless,
in practice the three terms have been treated as meaning
the same thing. The result is that willful, wanton, or

reckless conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent. . . . It is at least clear . . . that such aggravated negligence must be more than any mere mistake resulting from inexperience, excitement, or confusion, and more than mere thoughtlessness or inadvertence, or simply inattention." (Citations omitted; internal quotation marks omitted.) *Craig* v. *Driscoll*, supra, 64 Conn. App. 720–21.

The defendants are mired in the fact that, aside from the addition of the words "willful, wanton and/or reckless actions," the plaintiffs' allegations in their reckless counts mirror their assertions in the counts charging the defendants with negligence. Although there is a difference between negligence and a reckless disregard of the rights or safety of others, a complaint is not deficient so long as it utilizes language explicit enough to inform the court and opposing counsel that both negligence and reckless misconduct are being asserted. See *Brock* v. *Waldron*, 127 Conn. 79, 81, 14 A.2d 713 (1940). As set forth previously, the plaintiffs' complaint alleges conduct that constitutes an extreme departure from ordinary care in a situation that involves a high degree of danger.[22] The allegation of a specific policy to continue to serve alcohol to a particular patron, who is known to have an excessive drinking problem, while that patron already is intoxicated, with the knowledge that that patron would be operating a motor vehicle upon leaving the bar reflects wilful, wanton and reckless conduct sufficient to survive a motion to strike.[23]

---

[22] We recognize that the allegations in the counts alleging the negligent and reckless infliction of bystander emotional distress essentially mirror one another. Rather than adopting the defendants' conclusion that the allegations are not sufficient to state a cause of action for recklessness, however, we suggest that the plaintiffs' allegations of negligence were overinclusive.

[23] The defendants also challenge the allegations regarding recklessness on the basis that the plaintiffs failed to allege any predicate for their allegations—for example, precisely *how* the defendants would have known that

The judgment of the Appellate Court is affirmed.

In this opinion BORDEN and PALMER, Js., concurred.

SULLIVAN, C. J., with whom ZARELLA, J., joins, dissenting. Today the majority both overrules a case directly on point that properly had concluded that the Dram Shop Act (act) preempts the common law, and overrules more than 100 years of common-law precedent in creating a new cause of action for the negligent sale of alcohol. By doing so, the majority eviscerates a scheme of recovery that the legislature carefully had crafted in reliance upon these very long-standing, but now abandoned, common-law precedents. Because I believe, as this court has twice previously stated, that "[i]f the damage limitation [in the act] is inadequate, then the proper remedy is to increase the statutory limitation by legislative enactment rather than by overturning established judicial principles and precedents"; (internal quotation marks omitted) *Quinnett* v. *Newman*, 213 Conn. 343, 348, 568 A.2d 786 (1990); I respectfully dissent.

As the majority notes, "the legislature enacted the act to alleviate the harsh effects of the common-law rule on innocent third parties." Page 328 of the majority opinion, citing *Nolan* v. *Morelli*, 154 Conn. 432, 437, 226 A.2d 383 (1967). More specifically, "this act, in situations where it was applicable, displaced the common-law rule that the proximate cause of intoxication was not the furnishing of the liquor but its consumption." *Nolan* v. *Morelli*, supra, 437. Thus, the rule displaced by the act is that "[a]t common law there is no cause of action based upon negligence in selling alcohol to

Driscoll was intoxicated. Because matters of evidence are not required to be stated in the complaint; see Practice Book § 10-1; we reject the defendants' contention.

adults who are known to be intoxicated." *Quinnett* v. *Newman,* supra, 213 Conn. 345.

Although the act provides that one who sells alcohol to an intoxicated person may be held liable for damages caused by that person in consequence of his intoxication, since 1959[1] the act has imposed limitations on the amount of damages that may be recovered from the seller. General Statutes § 30-102 ("[i]f any person, by himself or his agent, sells any alcoholic liquor to an intoxicated person, and such purchaser, in consequence of such intoxication, thereafter injures the person or property of another, such seller shall pay just damages to the person injured, up to the amount of twenty thousand dollars, or to persons injured in consequence of such intoxication up to an aggregate amount of fifty thousand dollars"). I believe that an examination of the circumstances under which the act was enacted and amended, and particularly its relationship to the common law as it then existed, indicate that the legislature intended the act to be the exclusive remedy for those whom it enables to recover.

As noted previously, the act was intended to provide relief to persons denied recovery in negligence by the common law. In its earliest form, and until 1959; see Public Acts 1959, No. 631, § 1; the act permitted recovery of "just damages,"[2] subject to no statutory limitation. Public Acts 1872, c. XCIX, § 8.[3] Although it did not

---

[1] In 1959, the legislature amended the act to impose limitations on damages to be recovered under the act. Public Acts 1959, No. 631, § 1 (imposing liability on sellers "up to the amount of twenty-five thousand dollars"). The limitation was lowered to its present level in 1961. Public Acts 1961, No. 432.

[2] Under the act, " '[j]ust damages' means simply compensatory . . . damages." *Gionfriddo* v. *Gartenhaus Cafe,* 15 Conn. App. 392, 399–400, 546 A.2d 284 (1988), aff'd, 211 Conn. 67, 557 A.2d 540 (1989).

[3] Section 8 of chapter XCIX of the 1872 Public Acts provides: "If any person shall, while in a state of intoxication, do or cause (in consequence thereof) any damage or injury to any other person, or to the property of another, then, in such case, whoever sold the liquor to such person, whereby the person doing or causing such injury became intoxicated, shall be liable to pay to the party injured just damages, to be recovered in an action on

require proof of negligence and, therefore, also provided relief to some plaintiffs who could not have prevailed in a negligence action, the act did not require plaintiffs to prove any *additional* element beyond what would have been required to prevail in a negligence action. The act, therefore, provided for recovery of "just damages" by all plaintiffs who could have recovered in negligence if such a right had been recognized by the common law. Thus, until 1959, the act provided for full recovery against the negligent seller of alcohol for injuries caused by intoxicated persons.

The 1959 amendment, however, limited damages that might be recovered under the act, and thus limited damages that might be recovered by persons who could have proved the elements of a negligence action, had one existed, as well as the damages that might be recovered by those who could not prove that the seller had been negligent. Had the legislature intended the limitation to apply only to sellers who had not been negligent, it could have so provided. Instead, having created a right of recovery for those denied recovery by the common-law rule—that is, those who could have prevailed in a negligence action had the common law permitted one—the legislature chose to limit that right of recovery. Moreover, in 1961, when the legislature revisited the damages limitation, far from providing for unlimited damages for those who could demonstrate negligence, it lowered the ceiling on damages that it had established in 1959.[4] More than forty years have now passed since the 1961 amendment, during which the legislature could have provided by statute the unlimited damages that the majority supplies with its opinion. The legislature has not done so. Thus, the circumstances behind the

---

this statute; and if the party selling such liquor is a licensed dealer under this act, said amount may be recovered from the surety or sureties on his or her bond, provided it does not exceed the sum of one thousand dollars."

[4] See footnote 1 of this opinion.

enactment and amendment to the act lead me to conclude, as we concluded in *Quinnett* v. *Newman*, supra, 213 Conn. 348, that the legislature has preempted the judicial lawmaking in which the majority engages today.

The relationship of the act to other legislation in this area further suggests that the legislature did not intend to leave for the courts the question of whether to recognize a separate cause of action sounding in negligence, free from limitations on damages. "It is to state the obvious to observe that the liquor industry is heavily regulated." *Schieffelin & Co.* v. *Dept. of Liquor Control*, 194 Conn. 165, 180, 479 A.2d 1191 (1984). "This court . . . has recognized that the state's power and authority over the regulation of the liquor business is broad and pervasive." *Nelseco Navigation Co.* v. *Dept. of Liquor Control*, 226 Conn. 418, 422, 627 A.2d 939 (1993).

The legislature has exercised this power through voluminous and detailed statutes. Title 30 of the General Statutes, the Liquor Control Act, not only empowers the department of consumer protection to adopt regulations in furtherance of that act; see General Statutes § 30-6a; but it also directly, and in great detail, regulates the provision of alcohol to consumers. For example, it regulates the issuance and revocation of literally dozens of varieties of permits, including distinct permits, with distinct conditions, for cafes, nightclubs, taverns, restaurants, airport bars, airport restaurants, and airport airline clubs, among many others. General Statutes §§ 30-14 through 30-37k.

The legislature's attention to detail in its regulation of purveyors of alcohol has taken many forms. The legislature has established on what days and during what hours alcohol may be sold, determined which nonmembers of clubs holding club permits are to be considered guests, established a maximum number of days per year on which the holder of a nonprofit theater

permit is permitted to sell alcohol when no theater performance is given, and imposed a minimum number of bowling lanes for a bowling establishment permit and a minimum number of racquetball courts necessary to obtain a racquetball facility permit. General Statutes §§ 30-24, 30-35a, 30-37c and 30-91. It is thus against a background of extremely detailed and pervasive regulation of sellers of alcohol that we must consider the intent underlying the act as amended.

The pervasiveness of legislation in this area strongly suggests that the legislature, in enacting standards of liability for sellers of alcohol for damage caused by their intoxicated patrons, did not intend to leave for the courts the question of whether, and under what circumstances, liability beyond the statutory limits may be imposed on sellers for damage caused by their patrons. Instead, like its relationship to the common law at the time at which it was enacted and amended, the relationship of the act to the larger framework of legislation in this area leads me to conclude that the act was intended to provide the plaintiffs' exclusive remedy in the present case.

This same statutory background and the doctrine of stare decisis would strongly counsel against our recognition of a new common-law negligence action even had the legislature not preempted our common-law authority. "The doctrine of stare decisis counsels that a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it. . . . Stare decisis is justified because it allows for predictability in the ordering of conduct, it promotes the necessary perception that the law is relatively unchanging, it saves resources and it promotes judicial efficiency. . . . It is the most important application of a theory of decisionmaking consistency in our legal culture and it is an obvious manifestation of the notion that decisionmaking consistency itself has normative

value." (Citations omitted.) *State* v. *Ferguson*, 260 Conn. 339, 367–68 n.18, 796 A.2d 1118 (2002). Moreover, as the United States Court of Appeals for the Second Circuit recently noted in a different context, "[w]here a common-law principle is well established . . . the courts may take it as given that [the legislature] has legislated with an expectation that the principle will apply except when a statutory purpose to the contrary is evident." (Internal quotation marks omitted.) *Attorney General of Canada* v. *R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103, 127 (2d Cir. 2001). In my view, the doctrine of stare decisis has particular force in this case because of the long-standing nature of the common law upon which our legislature has relied in crafting the remedies available to parties such as the plaintiffs.

In its enactment and repeated amendment of the act, the legislature has no doubt been aware that, for more than 130 years, there has been no common-law right of recovery in negligence for plaintiffs such as those in the present case.[5] We have said as much in case after case before this court, all of which the majority overrules on this point today. See, e.g., *Quinnett* v. *Newman*, supra, 213 Conn. 345; *Boehm* v. *Kish*, 201 Conn. 385, 389, 517 A.2d 624 (1986); *Kowal* v. *Hofher*, 181 Conn. 355, 357, 436 A.2d 1 (1980); *Nolan* v. *Morelli*, supra, 154 Conn. 436. As such, the act represents the recovery scheme desired by the legislature in the absence of possible recovery at common law. Accordingly, the majority's radical change in the common law will upset the scheme of recovery envisioned by the legislature. In other words, the legislature's actions in this area were in reliance on our long established com-

---

[5] We previously have permitted actions in negligence against defendants who provide alcohol to minors where those minors have harmed third parties in consequence of their intoxication. See *Bohan* v. *Last*, 236 Conn. 670, 671, 674 A.2d 839 (1996); *Ely* v. *Murphy*, 207 Conn. 88, 95, 540 A.2d 54 (1988). The propriety of such actions is not presently before the court.

mon law, and this reliance counsels against deviating from the principle of stare decisis.[6]

The majority's argument that " 'the most cogent reasons and inescapable logic' " justify overruling *Quinnett* is unpersuasive. Page 329 of the majority opinion, quoting *State* v. *Ferguson*, supra, 260 Conn. 367 n.18. First, the majority notes that the act does not contain an express exclusivity provision. See page 326 of the majority opinion. In light of the fact, however, that at the time the act was enacted, and for 130 years since that enactment, there has been *no* common-law cause of action, it would be surprising if the legislature had provided such an express provision.

Second, the majority seems to suggest that its position is supported by the legislature's silence in the years between our decision in *Kowal* v. *Hofher*, supra, 181 Conn. 358–59, in which we concluded that the act did not preempt the common law, and our decision in *Quinnett* in 1990, in which we properly concluded that it did. Page 326–27 of the majority opinion. The majority seems to acknowledge, however, that it cannot reasonably rely upon such legislative silence as an affirmation of our decision in *Kowal* for the obvious reason that the legislature has, in the twelve years following *Quinnett*, expressed no disagreement with our decision in *that*

---

[6] Sellers of alcohol also presumably have a reliance interest in our long-standing common-law rule prohibiting recovery in negligence in such cases. Although the majority notes that parties who engage in tortious conduct seldom consider the rule of law that will be applied to their conduct if damage results; page 330 of the majority opinion, quoting *Conway* v. *Wilton*, 238 Conn. 653, 660, 680 A.2d 242 (1996); this principle is of very doubtful application to business establishments facing the prospect of vicarious liability for the acts of their employees, such as waiters, waitresses and bartenders. Presumably, in many cases, these proprietors will have obtained liability insurance to cover losses imposed by the act, and the proprietors and their insurers will have acted in justified reliance on the belief that their liability was limited according to the terms of the act and the long-standing common law that the majority abrogates.

case. Page 327 of the majority opinion. Indeed, contrary to the majority's statement that this post-1990 "legislative silence could just as reliably reflect an implied adoption of *Kowal* as of *Quinnett*"; page 327 of the majority opinion; legislative silence since 1990, if it has any significance, can mean only that the legislature has acquiesced in our decision in *Quinnett*. This is because *Quinnett* cannot possibly be reconciled with *Kowal*, as the majority elsewhere acknowledges; page 326 of the majority opinion; and, thus, *Quinnett* clearly overruled *Kowal*. Therefore, the majority's analysis of possible legislative acquiescence does not support its position.

Third, the majority claims that its recognition of a new common-law cause of action with unlimited liability for the negligent provision of alcohol does not conflict with the act's statutory limitation on damages. I disagree. The majority states that the "act provides a means of recovery for plaintiffs *who are unable to prove causation and culpability* . . . ." (Emphasis added.) Page 327 of the majority opinion. Although this is technically true, the statute also provides recovery to those who *are* able to prove causation and culpability. As explained previously, the legislature reacted to our common law by adopting a statute in this precise area that *provides a limit on recoverable damages*. In my view, to provide a further remedy, which the legislature itself has *not* chosen to provide, is inconsistent with the damages limitation that the legislature *has* adopted.

Moreover, the well established common-law rule abandoned by the majority was based upon a common-sense observation that maintains its validity today. "The reason generally given for the rule was that the proximate cause of the intoxication was not the furnishing of the liquor, but the consumption of it by the purchaser or donee. The rule was based on the obvious fact that one could not become intoxicated by reason of liquor furnished him if he did not drink it." *Nolan* v. *Morelli*,

supra, 154 Conn. 436–37. In my view, the responsibility of an individual for injuries resulting from his driving while intoxicated should not be reduced because another individual has provided the alcohol to him. As a result of the majority's decision today, juries will be permitted to apportion liability between the consumer and the provider, and a drunken driver's liability for the consequences of his actions will be reduced to the extent that the provider is held liable.[7]

Although the change in the law brought about by today's decision clearly will have a considerable impact on business and social relationships, the scope and nature of that impact remain unclear. This uncertainty suggests that the legislature, which can invite public participation in the analysis of all relevant policy consid-

[7] Under General Statutes § 52-572h (c), "[i]n a negligence action to recover damages resulting from personal injury, wrongful death or damage to property occurring on or after October 1, 1987, if the damages are determined to be proximately caused by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for such party's proportionate share of the recoverable economic damages and the recoverable noneconomic damages except as provided in subsection (g) of this section." While there are cases in which plaintiffs will be able to recover more money as a result of today's holding, owing to the deeper pockets of the individual or institution providing alcohol to the negligent consumer, there will also be cases in which the majority's rule will have the opposite effect. Among the drunken drivers who will be able to add the providers of alcohol as defendants for apportionment of liability purposes under General Statutes § 52-102b (a) will be some who have the ability to pay the full amount of damages. See General Statutes § 52-102b (a) ("[a] defendant in any civil action to which section 52-572h applies may serve a writ, summons and complaint upon a person not a party to the action who is or may be liable pursuant to said section for a proportionate share of the plaintiff's damages in which case the demand for relief shall seek an apportionment of liability"). In some cases, the establishment or social host who has served alcohol to the consumer will be unable to pay the proportion of damages assigned, and the consumer's evasion of some of the responsibility for the consequences of his or her voluntary intoxication will be at the expense not of the provider but of the victim. I would consider such a case an injustice. See General Statutes § 52-572h (g) (2) (limiting amount of noneconomic damages, unrecoverable from one joint tortfeasor, that may be reallocated to another).

erations and provide clear prospective rules to implement that policy, is better suited than this court to determine the costs and benefits of various liability regimes. As the majority indicates, drunken driving is a serious social ill that frequently results in tragedy, just as it did in the present case. Our sympathy for the victims of drunk drivers, however, should not lead us to usurp the legislature's authority to formulate public policy in this area. As we noted just this year, "just as the primary responsibility for formulating public policy resides in the legislature . . . so, too, does the responsibility for determining, within constitutional limits, the methods to be employed in achieving those policy goals." (Citations omitted.) *Thibodeau* v. *Design Group One Architects, LLC*, 260 Conn. 691, 715, 802 A.2d 731 (2002). The majority's opinion disregards this fundamental principle.

Finally, not only do I believe that the majority has improperly created a new common-law cause of action, I also have some difficulty understanding what a plaintiff must show in order to prevail under such an action. One statement in the opinion suggests that the majority broadly is "recogniz[ing] an action against a purveyor who negligently serves alcoholic liquor to an adult patron who, as a result of his intoxication, injures another." Page 330 of the majority opinion. As I discuss subsequently, however, the majority also formulates the cause of action in several other differing ways, leaving me, and, I suspect, the trial courts of this state, uncertain as to the showing required to demonstrate such negligence.

To begin with, although it is not perfectly clear from the previous quotation, I assume that the majority intends at least to require that, in order to prevail, the plaintiff must demonstrate that the defendant's negligent *service of liquor*, as opposed to merely the patron's *intoxication*, is causally related to the plaintiff's injury.

See page 338 of the majority opinion (stating that common-law negligence action can be satisfied upon proof that, inter alia, defendant's "negligence is a substantial factor in causing harm to a third person" [internal quotation marks omitted]), quoting *Slicer* v. *Quigley*, 180 Conn. 252, 273, 429 A.2d 855 (1980) (*Bogdanski, J.*, dissenting).

Second, notwithstanding the broad preceding quotation, the majority seems to clarify elsewhere in the opinion that in order to establish the negligent service of alcohol, it is not sufficient merely to demonstrate that the defendant served an intoxicated person. Rather, the plaintiff must demonstrate that the defendant "[knew] or should have known [that the] person [was] intoxicated . . . ." (Internal quotation marks omitted.) Page 338 of the majority opinion, quoting *Slicer* v. *Quigley*, supra, 180 Conn. 273 (*Bogdanski, J.*, dissenting); see also footnote 20 of the majority opinion (same language); page 339 of the majority opinion (serving alcohol to an *"obviously* intoxicated person" may be negligent [emphasis added]); page 328 of the majority opinion (discussing "element of scienter essential to a negligence action").

Finally, the majority opinion is unclear as to the need to demonstrate that the defendant knew or should have known that the patron was an alcoholic and that he intended to drive after being served. See footnote 20 of the majority opinion (question of fact whether "defendants actually knew or should have known that [the patron] . . . was an alcoholic, and that he would operate a motor vehicle"); page 340 of the majority opinion ("we expressly reject the claim that a purveyor who provides alcoholic beverages to . . . a *patron known to him to be an alcoholic cannot*, as a matter of law, be the proximate cause of subsequent injuries caused by the intoxicated patron" [emphasis altered]); page 339 of the majority opinion (serving to "intoxicated

person by one who knows or reasonably should know that such intoxicated person *intends to drive* a motor vehicle creates a reasonably foreseeable risk of injury" [emphasis added]).[8]

In summary, I believe that the radical change in the law wrought by the majority usurps the function of the legislature and is unwarranted on its merits. Since the majority is determined to take this step, however, it should, at the very least, set forth the precise elements of the new cause of action that it is creating. Accordingly, I respectfully dissent.

---

[8] The majority opinion also could be read to state that merely providing a single drink to a person known to be an alcoholic could be negligent, even if such provision did *not* result in intoxication, if the person subsequently became intoxicated and caused an injury. See page 340 of the majority opinion ("we expressly reject the claim that a purveyor who provides alcoholic beverages to . . . *a patron known to him to be an alcoholic cannot*, as a matter of law, be the proximate cause of subsequent injuries caused by the intoxicated person" [emphasis altered]). I assume that the majority did not mean to dispense with the requirement that the drink caused the alcoholic to become intoxicated, or was provided to an intoxicated alcoholic, in view of the fact that the majority has advanced no rationale for dispensing with the intoxication requirement in order to establish negligence in the context of serving to a known alcoholic.